ALBANY,
Oct. 1832.

Canal Bank of
Albany
v.
Mayor, &c. of
Albany.

CANAL BANK OF ALBANY *vs.* THE MAYOR, &c. OF ALBANY.

In proceedings under the act *relative to streets* in the *city of Albany*, in the apportionment and assessment of damages awarded to owners of *ground required* for the widening of a street, among the owners and occupants of houses and lots of *ground benefitted*, the jury, in fixing the amount to be paid by the owner or occupant of a lot having a dwelling house or other building upon it, have not the right to regard such lot as *vacant* and *unimproved*, but must deduct from the whole amount of benefit such damage, if any, as will be done to the building, or such expense as will necessarily be incurred by the owner in consequence of the contemplated alteration of the street.

If, in the opinion of the jury, the damages or recompense to which the owners of ground required for an improvement under this act are entitled, *exceeds the benefit* which will accrue to the owners or occupants of such houses and lots of ground as in their judgment ought to be assessed, the jury must so certify, and all further proceedings will be suspended.

In making their inquisition, the jury cannot regard covenants or agreements existing between landlords and tenants, or the use to which a lot or the building thereon is appropriated; all they have to do in this respect is to set forth the names of the owners, lessees and occupants, and whether the whole or only a part of a lot, subject to a lease or agreement, is required, &c.

The persons making the inquisition partaking more of the character of *commissioners* than of a *common law jury*, their *affidavits* showing the grounds of their inquisition will be received to impeach or invalidate it; the rule of law that the affidavits of jurors will not be received to impeach their verdict being held inapplicable to proceedings of this kind.

If they refuse to make affidavits, proof of their admissions or confessions will be received, which will be considered conclusive, unless contradicted.

The jury may *view* the premises, but such view should be under the charge of the sheriff, or one of his officers.

The mayor's court may issue *subpœnaes* to compel the attendance of witnesses before the *court and jury*, and parties interested are entitled to be heard previous to the jury retiring to deliberate; but on the motion for confirmation, *oral testimony* impeaching the justice or contesting the correctness of the inquisition, is inadmissible.

The *costs and expenses* of the proceedings must be paid by the corporation, and cannot be included in the apportionment and assessment upon the owners of lots benefitted.

CERTIORARI to the mayor's court of Albany, to remove proceedings had for the widening of State street. In January, 1832, proceedings were instituted for the widening of *State street*, between *North Market* and *Quay streets*, by virtue of the

acts of the legislature relating to the city of Albany. A *jury* were summoned, returned and empannelled, who, on the 3d April, brought an inquisition into court, describing the ground and appurtenances required for the purpose of the contemplated improvement, a valuation of the damage and recompense to which the owners whose property was intended to be taken were entitled, and an apportionment and assessment of such damage among the owners and occupants of houses and lots of ground intended to be benefited by the improvement. The total amount of the assessment, *including* $558,55 *for the jurors' fees and other expenses* of the proceeding, was $98,808,55, which was apportioned among the houses and lots intended to be benefited, the sum of $10,986,67 being assessed as benefit upon a lot of which the Canal Bank has a lease for 10 years from the 1st May, 1830. On the day assigned for the parties interested to shew cause why the inquisition should not be confirmed, the Canal Bank appeared by their counsel, and asked a postponement until *May*, which was granted. In May the counsel for the bank asked a *subpœna* for witnesses, alleging that he could not procure their voluntary affidavits, and also demanded to be allowed to produce witnesses to prove that the inquisition was erroneous and unjust. The court decided that the matter before them must be determined upon the *inquisition* of the jury and such *affidavits* as the parties interested should think proper to produce, that they were not authorized to hear *oral* testimony, and that they therefore refused a subpœna for witnesses. The counsel for the bank then read an affidavit made by himself, stating that he had been *informed by two of the jurors* who had signed the inquisition, that the jury assessed the damage and recompense on the lots of ground which in their opinion were to receive benefit from the widening of State street, *without reference to any houses on such lots, or whether such houses were benefitted or injured, but according to the capacity of each lot for improvement, by being built upon, if it were a vacant lot,* and not otherwise ; that they made no allowance in the assessment in reference to the use to which any lot or the building thereon was appropriated, or to the fact that the lot was leased or not, except

*Margin note:* ALBANY, Oct. 1832.

Canal Bank of Albany v. Mayor, &c. of Albany.

ALBANY,
Oct. 1832.

Canal Bank of
Albany
v.
Mayor, &c. of
Albany.
in the case of two lots, on one of which a *church* was erected, and on the other the state house was built ; that he had applied to those jurors to make affidavits of the facts so communicated to him, and that they had refused.   He further stated that *another juror had informed him* that he understood the charge of the court, when the matter was submitted to them, to be, " that the jury were bound to assess all the damages occasioned by widening the street, on property benefitted, *whether such property was benefitted to the amount required to be assessed or not,* and that he, the juror, believed the whole amount required to be assessed *exceeded the whole benefit* of the widening of the street to the property which was assessed in the requisition."   The counsel for the bank further read affidavits shewing that if the street was widened, an expense of at least $1800 must necessarily be incurred by the bank in rendering the building occupied by them as tenantable and valuable as it then was ; that the bank had already expended in improvements upwards of $2500, and that to improve the lot in case the street was widened in such a manner as to derive any additional benefit or income therefrom, an expenditure of at least $5000 more would be necessary, and that the bank, by the terms of their lease, would be obliged at the end of their term to leave all improvements made by them without receiving any compensation therefor from their landlord.   The court, after hearing counsel, *confirmed the inquisition.*   The judges, in their return to the certiorari, certify, that they did not charge the jury, as the counsel for the bank had stated he had been informed by one of the jurors.   The Canal Bank applied for a certiorari, which was granted by this court, and on the coming in of the return, the same was argued.

*A. Taber · & B. F. Butler,* for plaintiffs in error.   When a particular jurisdiction like the one in question is erected by statute, this court has the power to review its proceedings, unless expressly prohibited.   1 *Salk.* 148.   2 *Ld. Raym.* 836, *S. C.*   3 *Mod.* 94.   2 *Strange,* 849.   1 *Ld. Raym.* 580.   12 *Mod.* 403, *S. C.*   2 *Caines,* 181.   16 *Johns. R.* 8, *and* 49.   6 *Wendell,* 564.   The mayor's court acted *judicially* in this matter, and their proceedings therefore may be reversed.   8

ALBANY,
Oct. 1832.

Canal Bank of
Albany
v.
Mayor, &c. of
Albany.

*Wendell,* 47. They erred in refusing process of subpœna and to hear testimony. The day assigned to shew cause why the inquisition should not be confirmed was the first day in court afforded to the plaintiffs in error; notice of the proceeding had not been given to them ; it had been given to the owners of land required for the widening of the street, and though "persons to be benefitted" were alluded to in the notice, such allusion did not include the plaintiffs in error, as they were prepared to shew, had their testimony been received. Every person affected by a legal proceeding is entitled to express notice, whether the statute under which the proceeding be had, direct it to be given or not. 6 *Johns. R.* 8. 15 *id.* 53. The plaintiffs in error were therefore entitled to be heard. The court have the power to *confirm ;* in this, much is embraced—*it* necessarily includes the right to *disaffirm,* and if the parties interested were prepared to shew that gross error had happened, or that injustice had been done, the court should have received the evidence ; and if the proof established the allegations, such error or injustice, it was the duty of the court to refuse to confirm the inquisition. But if the plaintiffs in error were not entitled to be heard on the merits, they shewed sufficient cause why the inquisition should not have been confirmed ; they shewed that the jurors had acted upon erroneous principles in the apportionment and assessment of the damages; they offered the best evidence in their power, stating the facts as derived from the information of the jurors themselves, and their statement was not contradicted. The affidavits of jurors that their verdict was rendered under a mistake of legal principles, or was founded upon an erroneous basis, will be received to impeach the verdict; 5 *Cowen,* 106, 121; and the manner in which the facts appear in this case is equivalent to a verification by the affidavit of the jurors. Whether, therefore, the mayor's court acted as a *court* or as *commissioners,* when called upon to confirm the inquisition, they should have refused to do so. The inquisition, at all events, must be set aside, as the jury, in their assessment, have included nearly $600 for *costs,* when the statute has made no provision on the subject. If, however, the statute under which these proceedings were had sanctions what has been done, then it is insisted, that as it authorizes the tak-

ALBANY,
Oct. 1832.

Canal Bank of
Albany
v.
Mayor, &c. of
Albany.

ing of property, or what is equivalent thereto, without notice to the party to be affected, it is unconstitutional, and all proceedings under it void. *Constitution of the State, art.* 7, § 2. 1 *Black. Comm.* 138. 3 *id.* 380. 3 *Dallas,* 388. 7 *Johns. R.* 477, 505.

*J. Lovett & A. Van Vechten,* for defendants in error. The statute under which the proceedings were had directs a *notice* to be published in the state paper describing the ground required for the widening of a street, specifying the time and place, when and where the damages of the *owners of such ground* will be inquired into, and when and where such damages will be *apportioned among the owners or occupants* of the houses and lots of ground and other real estate *which are to be benefitted* by the intended appropriation. *Laws of* 1826, *p* 203, § 54. This notice was given, and though a statutory notice, there is no more reason to complain of its insufficiency to apprise parties interested than there is in any other case in which similar notices are authorized by the legislature. Nor can it be pretended that the notice is not as much directed to the persons called on to pay the damages as to those whose lands are intended to be taken ; for only those whose property will be benefitted can be subjected to the payment of the damages, and that property must necessarily be in the vicinity of the contemplated improvement. The mayor's court did right in refusing to hear testimony ; they could not re-investigate the matters upon which the jury had passed ; such power is not confided to them ; it is the province of the jury, and not of the court to inquire into and assess the damages, and to apportion the same among the owners of property benefitted. There is nothing to be done by the court but to affirm or disaffirm the assessment ; they act *qua commissioners,* and their proceedings do not partake at all of the nature of *judicial proceedings.* 7 *Johns. R.* 546. The court cannot take into consideration the peculiar circumstances under which the plaintiffs in error hold the property for which they are assessed. The error, if any, is in the *quantum* of benefit, over which the court have no jurisdiction, it being a matter confided to the discretion of the jury. 2 *Wendell.* 398. It is not denied that

inasmuch as to them is given the power to *confirm,* that upon proper cause shewn they may refuse confirmation, as in cases of irregularity in the prosecution of the proceedings, or corrupt conduct on the part of the jury ; neither of which is pretended in this case. The complaint is that the inquisition is founded upon an erroneous basis, and the foundation of that complaint is the alleged information of two of the jurors, for as to the story of the third juror it is expressly contradicted by the court itself. In relation to the information given, no principle is better settled, that even the affidavits of the jurors cannot be received to shew the grounds of their verdict, 1 *Wendell,* 300 ; in which case the court say that the decision in 5 *Cowen,* 106, instead of impugning, establishes the rule on this subject ; and if their affidavits cannot be received, surely information given by them to a party interested as to the grounds of their finding will not authorize a court to set aside an inquisition. As to the objection that *costs* are included in the assessment, they are incident to the proceeding, and included in the principle that the property benefitted shall be responsible. Besides : the 56th section of the act of 1826 may be construed to authorize the collection of costs ; but if the costs have been erroneously included, the proceedings will not be reversed on that account, as a *remittitur* may be ordered, and a *pro rata* deduction made from each assessment.

ALBANY,
Oct. 1832.

Canal Bank of
Albany
v.
Mayor, &c. of
Albany.

*By the Court,* NELSON, J. As early as 1787, an act was passed providing compensation to the owners of land in the city and county of New-York, which was taken for public roads or streets, and a mode prescribed of ascertaining the same. 1 *Laws of N. Y. Greenleaf's ed.* 417, 441. The mode of estimating the damage and recompense to which the owners were entitled, by that act prescribed, was continued in the city of New-York until the act of 1807. The act of 1787, was made applicable to the city of Albany, 7th March, 1792, 2 *Laws of N. Y. Greenl. ed.* 399, and has continued, I believe, in force in that city to this time, as the one now under consideration so far as relates to the valuation of damage and recompense is substantially the same. The damage and recom-

ALBANY,
Oct. 1832.

Canal Bank of
Albany
v.
Mayor, &c. of
Albany.

pense which the owners were entitled to in the city of New-York were paid out of the funds of the corporation, without any assessment of benefit, until the act of 1807—by which act the mayor, aldermen and commonalty were authorized to appoint five freeholders, to make an equitable assessment of the damages among the owners or occupants of all houses and lots intended to be benefitted, in proportion as nearly as might be to the advantage which each should be deemed to acquire. 5 *Laws of N. Y. Web. & Sk. ed.* 128. 2 *id.* 130. So in the city of Albany: the damage and recompense to which the owners were entitled were paid out of the corporation funds, without any assessment of benefit, except in the fifth ward, until the act of 1828, when the provisions applicable at first to the fifth ward only were extended to the other wards of the city. The act of 15th April, 1818, *sess.* 41, *p.* 147, concerning the fifth ward, after adopting the mode then in use in the city, of assessing the damages of the owners whose lands were taken for the use of public streets, also directed the jury to apportion and assess such damages and recompense upon the owners of all *houses* and *lots* of ground which were intended to be benefitted by the public use of such ground, in proportion to the advantages which such owners should be deemed to acquire. It is, I think, the union of these two distinct duties, to wit, the estimate of the damages for the land taken, and the apportionment and assessment of them upon the owners benefitted, to be executed at the same time and by the same body of men, which has produced the confusion and embarrassment in the proceedings under the act, and the hardship, if not injustice, upon the persons assessed for benefit.

The first act which was passed, and all subsequent acts providing a jury to estimate the damage and recompense to the owners whose lands were taken, required personal notice to be given to them of the time when the jury should be empannelled, and the damages assessed. This afforded them an opportunity to take any exceptions to the jury, and also to introduce their evidence of the value of the lands and the amount of their damages, &c. Thus far the statute seems just and equitable, and guards with reasonable caution the rights of all parties interested; and I perceive no objection to the right of

ALBANY,
Oct. 1832.

Canal Bank of
Albany
v.
Mayor, &c. of
Albany.

the mayor's court to issue subpœnas to procure the attendance of witnesses, as the examination before it is obviously by means of oral testimony in open court. The jury had a right to view the premises ; but I apprehend this must have been under the care and protection of the sheriff and his officers, as in ordinary cases, and that no testimony could have been legally heard by them on either side, except in open court and under its direction. The former acts contemplated the assessment of damages the same term in which the precept by which the jury were summoned was returnable, as no time was specified within which the jury should assess such damages and recompense. The statute of 1826, which annexed to the duties of the jury the apportionment and assessment of benefits, altered the law in this respect, by extending the time to the second term of the court thereafter. When the legislature by this act imposed upon the same jury the duty of apportioning the damage and recompense upon the houses and lots benefitted, no provision was made for notice to the owners or occupants, giving them the opportunity to appear before the jury and contest the apportionment and assessment. Indeed, the course of proceeding by imposing this duty upon the jury who estimated the damages, rendered it wholly impracticable to afford an opportunity to the owners or occupants to appear before them, as it could not be ascertained whose lots they would return as benefitted until their report was made to the court. The jury had necessarily discharged their duty before the owners or occupants could know that their houses and lots were assessed as benefitted. The only opportunity which they have, from the nature and mode of proceeding, to establish the injustice of the apportionment and assessment, or error, if any, in the proceeding, is after they are made or committed, and on the motion for confirmation by the court. If they cannot appear here and be heard, they are remediless, and their property may be taken for public purposes without being heard, and without even the means of knowing that it has been so taken, until actual appropriation. It is somewhat remarkable that the law should have been so careful in securing the rights of the parties whose lands are taken for public purposes, and providing a full compensation therefor,

ALBANY,
Oct. 1832.

Canal Bank of
Albany
v.
Mayor, &c. of
Albany.

and at the same time so utterly neglectful of the rights of those whose lands are assessed to pay such compensation. It is obvious that the amount of private property appropriated to public purposes is just as great in the one instance as in the other. The rights of one class of individuals are secured by the award of damages equal to the value of the lands taken; those of the other by the assessment upon their lands to an amount *not exceeding* the benefit. The act of 1826 does not even provide for the appearance of the owners or occupants whose houses and lots are assessed for benefit on the motion for confirmation; nor is the precise time when the inquisition will be returned to the court defined by statute, or any notice given, public or private, of the time when confirmation will be applied for. Public notice was gratuitously given in this case by the attorney for the corporation, upon which the plaintiffs appeared. We will not now examine the question whether private property can be taken for public purposes without previous notice to the owner, and an opportunity to be heard upon the estimate of compensation. When that question arises, it will be time to examine it. Severe and harsh as this statute is upon such owners or occupants, there can be no doubt, if they do happen to have notice and do appear, they have a right to be heard against the motion. This was conceded to the plaintiffs in this case; and the position I intend to maintain is, that they shewed sufficient cause *prima facie*, unexplained and uncontradicted, to call upon the court, whether they sat as a court or as commissioners, in the exercise of a sound legal discretion, to disaffirm the inquisition. I am inclined to think the court decided correctly in refusing to issue a writ of subpœna, or to hear oral testimony at this stage of the proceedings. That description of evidence strictly was applicable only to the case while pending before the *court and jury*, and not upon the motion for confirmation.

This is a summary proceeding, and to be heard according to the rules and practice, and in the mode peculiar to such a hearing. The evidence upon which such a motion is sustained or resisted before the court, is the voluntary affidavits furnished by the parties; and testimony inferior in degree to that ordinarily required on the trial of issues of fact at com-

ALBANY,
Oct. 1832.

Canal Bank of
Albany
v.
Mayor, &c. of
Albany.

mon law is competent and admissible. Hence, in such summary proceedings, the affidavits of the parties and all persons interested, and all proofs of a secondary character, are heard by the court. Such cases are usually addressed to its equitable and discretionary powers, and the rules of evidence are relaxed and a wider range indulged in laying the facts before the court. This seems to have been the view taken by the mayor's court of the law and of their duties, as may be inferred from the fact of their receiving the affidavits presented by the plaintiffs in this case; but I am constrained to differ from them in reference to the weight and effect given to the facts embraced in those affidavits. If they were at all admissible and entitled to the consideration of the court, they were, under the circumstances, being uncontradicted and unexplained, in judgment of law conclusive proof of the facts charged, and should have been so held by the court. If they were competent evidence, being unimpeached, they were sufficient more especially as the defendants had it in their power to call upon any member of the jury to contradict or explain any statements made in them. The omission to do so confirms the legal inference of the truth of the affidavits.

It was said, upon the argument, that the affidavits of the jurors were inadmissibe to contradict or impeach in any way their inquisition, and therefore affidavits of the confessions or admissions of the jury were incompetent. One answer to this argument is, that if the affidavits were not competent evidence to be considered by the court, they should have been objected to and rejected. The fact of their being received and considered, as appears by the return to the certiorari, was calculated to mislead the plaintiffs, unless they were to be viewed and have the effect of competent evidence. Being received, the plaintiffs had a right to rely upon their sufficiency if uncontradicted. Had they been rejected, the alternative of furnishing other evidence, or trusting to a correction of the error of the court in the rejection, would have been presented. Even then, if the position was sound that the affidavits were improperly received, I am of opinion it cannot now be taken, as they were in fact received and considered without objection either by the adverse party or the court.

ALBANY,
Oct. 1832.

Canal Bank of
Albany
v.
Mayor, &c. of
Albany.

But I am satisfied the affidavits were properly admitted. It is true that the rule rejecting the affidavits of jurors, and of course their confessions or admissions, to impeach their verdict is strict, and rarely if ever departed from ; 1 *Archb. Pr.* 197, *and cases there cited ;* 5 *Cowen,* 106 ; 6 *id.* 54 ; 1 *Wendell,* 297 ; 3 *Caines,* 57 ; 4 *Johns. R.* 486 ; 15 *id.* 309 ; and I am not now disposed either to vindicate or impugn it.   There are cases, both in our own and the English courts, in which appeals to the sense of justice of the courts have excluded, if not overcome the stubbornness of the rule. I admit they are few, and do not intend to multiply them. It is enough that the rule is exclusively applicable to a common law jury, and is never applied or enforced where a body of men are substituted in their place, as in the case of arbitrators, referees, commissioners, &c.   The principle applicable to a common law jury never could be endured in these cases, and the grounds upon which it may be defended when confined to the verdict of the jury, do not here exist.   The common law jury is carefully selected by lot from the body of the county, and again from the panel ; issues of fact are formally made up for their consideration and decision ; disinterested witnesses only are heard before them, who are thoroughly examined by the counsel of the respective parties ; questions of law and fact are fully investigated ; and the whole case is summed up before them by the court, who give to the jury the law, being responsible to the parties for its correctness, and present to them the questions of fact to be considered and decided.   The jury retire under the charge of an officer of the court, sworn not to speak to them himself, nor allow others to speak to them, and to keep them together till they have agreed on their verdict, and then return with them into court to render the same.   Even then, if the court are dissatisfied with the verdict, the jury may again be sent out to reconsider the case, and they are entitled to the advice of the court in any stage of their deliberations.

It is obvious, from this brief sketch of the proceedings of a common law jury ; from the multiplied means of accurate information, both in law and fact ; from the guards which have been cautiously and securely thrown around them to prevent extraneous influence, or the knowledge of any fact or circum-

ALBANY,
Oct. 1832.

Canal Bank of
Albany
v.
Mayor, &c. of
Albany.

stances except such as transpired in open court, all afford to the parties great security against error or mistake by the jury, and some foundation in reason for the policy of the rule which can exist in no other proceeding. In this case there is nothing to characterize the twelve men empannelled as a jury but the name and mode of selection. They are by the act to return their inquisition to the mayor's court " at or before the second term thereafter," meaning the second term after they are empannelled ; during all the intermediate time they go at large, among all parties in interest, and obtain, each for himself, such information as they please, and from such sources as they please, in the course of the execution of their duties. We do not say that this is not the most judicious mode of proceeding to attain the end contemplated by the law ; it may be so ; all we contend for is, that a body of men proceeding in this manner in examining, considering and settling great and important interests, and rights of property, are not entitled to the appellation, nor their verdict or inquisition to the attribute or sanctity of a common law jury. We might as well award the character of a jury to the five disinterested freeholders who apportioned the damages upon the lots and houses benefitted in the city of New-York under the act of 1807, or to the three commissioners now appointed by the supreme court to discharge the like duty : or to the superintendant who is directed by the act of 1826 to make a just and equitable assessment upon owners benefitted, of the estimated expense of making common sewers, drains, &c., pitching, levelling and paving streets, &c. The present jury are but a substitute for these different bodies of men. On this point of the case the mayor's court have taken the same view which I have endeavored to establish. The judges return, among other things, their charge to the jury, in which it appears they stated, "that they, the jury, were not empannelled as a common law jury ; that they might meet together from time to time and view the premises, and again separate, as they thought fit, until they had agreed upon the matters," &c. If, then, the proceedings of the jury are not to be regarded as those of a common law jury, of which I cannot doubt, the court were bound to receive the affidavits of any one of them offered by the plaintiffs ; and

ALBANY,
Oct. 1832.

Canal Bank of
Albany
v.
Mayor, &c. of
Albany.

if they could not be obtained, then admissions or confessions were competent evidence on this summary hearing. In the case of *Smith* v. *Cheetham*, 3 *Caines*, 57, no doubt was entertained by the court as to the competency of the confessions or admissions of the jury, if their own affidavits were admissible, and the only difficulty was the rule which rejected the evidence of the jurors themselves to impeach their verdict. That was a motion for a new trial, on the ground of irregularity on the part of the jury. This secondary evidence must be heard, from the necessity of the case, as no means exist, or are furnished by the court to procure better, even where it exists, or might be found. 7 *Cowen,* 515. We do not believe that the court below put the confirmation of the inquisition upon the ground, that assuming all the facts charged in the affidavits of the plaintiffs to be true, there was no error in the proceedings or inquisition, though this position might be taken by the plaintiffs in error, the affidavits having been received in evidence on the hearing. They might well argue that the court having received their evidence, and it being unimpeached, must have decided, in confirming the inquisition, that no error was disclosed by it. The counsel for the defendants have not here seriously attempted to sustain the decision upon this ground.

The statute prescribes with sufficient accuracy the duties of the jury, and they are bound, upon well established principles, to confine their proceedings strictly within its regulations. They are to assess the damages and recompense which the owners of the ground taken for the use of the street are entitled to, and to " apportion and assess such damages and recompense upon the owner or owners of all the *houses* and *lots* of ground which are intended to be benefitted, &c. as nearly as may be, in proportion to the advantages which such owner or owners shall be deemed to acquire." It is the *benefit* to the *houses and lots* of the owner, and not to the *lot,* disregarding the *house,* which is to be assessed in the apportionment. The rule, therefore, which the jury adopted, and by which they made the apportionment, and which disregarded the *house,* whether benefitted or injured, was not justified by the statute. The case of the plaintiffs illustrates the error of the rule so far as injury to the building is important. The jury, in

ALBANY,
Oct. 1832.

Canal Bank of
Albany
v.
Mayor, &c. of
Albany.

pursuance of it, assessed upwards of $10,000 benefit upon the *lot* of the plaintiffs, disregarding the *house*—which, as appears from the affidavits, will be injured by the improvement $1800. It is obvious this amount ought to have been taken out of the estimate of benefit to the naked lot.

Again; it appears that one of the jurymen acted under the belief that the statute required him to assess all the damage and recompense upon the houses and lots benefitted, whether such damage exceeded the benefit or not; and that in his opinion the damages actually apportioned exceed the benefits. This principle is erroneous. The jury have no more right to assess upon the benefitted houses and lots an amount *exceeding such benefit,* in their opinion, than they have to award to the owner whose lands are taken an amount in their opinion less than the actual damage; and if the statute cannot be executed without doing so, it must fail, as containing principles in themselves irreconcileable and impracticable.

I cannot assent to the position that the jury are to take into consideration in their apportionment of benefits the relation which may exist between the landlord and tenant, or the owner and occupant, or the use to which the houses and lots are devoted; they are to regard the houses and lots as such, and as they appear to them, without reference to owner, occupant, or use. This is the only basis of a just apportionment upon the property benefitted; any other would be unsubstantial, and liable to great uncertainty and evasion.

The question of costs is of but little importance, and will be briefly noticed. I am of opinion their allowance was error. It has before been shewn that down to the act of 1826 the *damage* or *recompense* which the owner was entitled to was paid by the corporation, and not apportioned or assessed upon the benefitted houses and lots. That act provides that the *damage* and *recompense,* and nothing more, shall be apportioned as above stated. What right have the court or jury to superadd the amount of the costs and expenses? No such authority can be found in the act. The *damage* and *recompense* are terms definite, and distinctly understood, as embracing the loss of the owner whose property has been taken by the public, and it is this loss only which is directed to be apportioned. The

costs must be paid as both damages and costs were paid before the act of 1826. There is nothing in the 56th section of the act of 1826 referred to which varies this construction of the act; that provision concerning costs applies only to cases where the property is advertised for sale for non-payment of the assessment, and of the interest from the time of confirmation, and to costs and charges of *advertising*. Why should the costs of the proceedings be apportioned upon the benefitted lots, when the statute directs that the *damage* and *recompense*, exclusive of any thing else, shall be apportioned and assessed upon them to the *full amount of benefit*, as nearly as may be? Neither should costs be allowed, unless expressly given to the corporation.

Upon the whole, after a careful examination of the case, and upon the grounds, and for the reasons above given, I am satisfied that the confirmation of the inquisition ought to be set aside.