SERRELL *v.* PATTERSON.

Constitutional Law—Eminent Domain—Decision by Majority of Commissioners—Establishment of Drains.

> Section 2, article 18, of the Constitution, providing that, when private property is taken for the benefit of the public, the necessity for using such property, and the just compensation to be made therefor, shall be ascertained by a jury of twelve freeholders, or by not less than three commissioners appointed by a court of record, does not require a unanimous determination by the commissioners so appointed, but should be construed as authorizing the appointment of commissioners clothed with all of the powers exercised by such officers at the time of the adoption of the Constitution, among which was the right to decide all questions by a majority vote, as recognized by Rev. Stat. 1846, chap. 1, § 3, subd. 3 (1 How. Stat. § 2, subd. 3).

> Accordingly, under the statute cited, providing that, in the construction of statutes, all words purporting to give a joint authority to three or more public officers or other persons shall be construed as giving such authority to a majority thereof, unless otherwise expressly declared in the law conferring the authority, it was *held* that a decision by a majority of the commissioners appointed to determine the necessity for a proposed drain was final and conclusive. *Kress* v. *Hammond*, 92 Mich. 372, distinguished.

*Certiorari* to Oakland; Carpenter, J., presiding. Submitted November 19, 1895. Decided December 3, 1895.

Samuel J. Serrell, drain commissioner for the county of Oakland, applied to the circuit court for a writ of *mandamus* to compel Thomas L. Patterson, judge of probate for said county, to appoint special commissioners to determine the necessity for a proposed drain. Relator brings *certiorari* to review an order denying the writ. Affirmed.

*George W. Smith,* for relator.

*Aaron Perry,* for respondent.

LONG, J. Application in writing was made to the relator, who is drain commissioner of Oakland county, for the establishment of a drain in the township of Groveland, in that county. Fourteen names were attached to the application. Such proceedings were had as the statute requires of the commissioner, who thereafter petitioned the probate court for special commissioners to determine the necessity of the drain. Citations were issued in February, 1893, by the probate court, which were duly served; but, upon the hearing, the petition was dismissed. In March, 1894, the petition was renewed. New citations were issued, and served, and duly published. Commissioners were appointed, thereafter met, and entered upon the discharge of their duties, and subsequently made a report to the probate court against the laying out of the drain; two of the commissioners signing such report, and one reporting in favor of the location of the drain.

In January, 1895, the relator again petitioned the probate court for new special commissioners, on account of the disagreement of the former ones. In this new petition no new matter was inserted, except statements showing the report and disagreement of the former commissioners. Citation was duly issued upon this petition, and a hearing had in the probate court. Two objections were raised to the granting of the petition:

1. That the decision by a majority of the three special commissioners against the necessity of the drain ended all proceedings, and the probate court had no jurisdiction to appoint new commissioners.

2. That the probate court should consider the original application to the drain commissioner for the drain, and, if it were found that six names had been improperly or fraudulently attached to it, then the application could not be a basis for the proceeding.

It appeared that six of the names had been cut from off a former petition, and annexed to the new.

The probate court held that, while it was his duty to appoint new commissioners upon the disagreement of the

former ones, yet he should reopen the case for a new hearing upon all the matters in dispute, and that the six names fraudulently attached to the petition vitiated the entire proceedings, and on that ground refused to appoint new commissioners, and dismissed the petition. Petition was thereupon made to the circuit court for a *mandamus* to compel the probate court to set aside such order, and appoint the commissioners. A hearing was had upon that application in the circuit court, and *mandamus* refused, on the ground that the determination by a majority of the commissioners against the drain was conclusive. The case comes to this court by *certiorari* to review the action of the circuit court denying the *mandamus*.

But one question will be discussed. The probate court, in determining the effect of the decision of a majority of the commissioners, it is claimed, followed the case in this court of *Kress* v. *Hammond*, 92 Mich. 372, in which it was held that, where the jury in a similar case disagreed, the probate court had jurisdiction to order the summoning of a new jury. That case involved the question only of the right to summon a new jury, and the effect of a decision of a majority of the commissioners appointed under this statute was not involved, though inadvertently, in the opinion, the words "or commissioners" were used.

Section 2, art. 18, of our Constitution requires that—

"When private property is taken for the use or benefit of the public, the necessity for using such property, and the just compensation to be made therefor, except when to be made by the State, shall be ascertained by a jury of twelve freeholders residing in the vicinity of such property, or by not less than three commissioners appointed by a court of record, as shall be prescribed by law."

In *Kress* v. *Hammond, supra,* it was held that this constitutional provision requires the unanimous verdict of the jury, as the word "jury" means a common-law jury, with all the incidents thereof, and that, therefore, a

unanimous verdict was required. In the present case the question is presented whether a majority of the three commissioners may make such determination. We think that the word "commissioners," as used in this section of the Constitution, means commissioners clothed with such powers as prior to the adoption of the Constitution they had been clothed with,—that is, the right to decide all questions by a majority vote; and paragraph 3, § 2, How. Stat., carried into effect the rule by which such decisions were reached by a majority of the commissioners. This section antedates our present Constitution, and provides:

"All words purporting to give a joint authority to three or more public officers or other persons shall be construed as giving such authority to a majority of such officers or other persons, unless it shall be otherwise expressly declared in the law giving the authority."

Randolph, in his work on Eminent Domain (section 323), says:

"When a tribunal is invested with powers to be exercised in the public interests, it is essential that all the members should act upon the matter in hand; but a majority may decide. The reason for the rule is that matters of public concern should not be delayed, perhaps indefinitely, by insisting upon unanimity in council. This rule has been applied, on principle or by statutory direction, both to boards of commissioners, by whom the necessity of the work is to be determined, and to those charged with the duty of assessing compensation. But, unless the statute plainly permits, the condition that all members of the tribunal must participate will not be relaxed."

The New York constitution (article 1, § 7) provides, in reference to the taking of private property for the use and benefit of the public, that the necessity for using such property, and the just compensation therefor, "shall be ascertained by a jury, or by not less than three commissioners appointed by a court of record, as shall be prescribed by law;" and it has been held by the courts

of New York, under this provision, that a majority of the commissioners may determine the questions submitted, and that the decision of such majority is valid and binding upon the parties. *In re Church Street,* 49 Barb. 455; *In re Broadway Widening,* 63 Barb. 572; *Astor* v. *Mayor, etc., of New York,* 62 N. Y. 580.

We think the ruling of the circuit court was correct; and the order there made will be affirmed.

The other Justices concurred.