## WIXOM *v.* BIXBY.

| 127 | 479 |
| 139 | 527 |

Eminent Domain—Jury—Impeaching Verdict—Evidence.

· The jury provided for by section 2, art. 18, of the Constitution, in proceedings to condemn land for the public use, is a common-law jury, whose verdict cannot be impeached by the testimony of a member thereof. So *held* where it was sought to show, as against a confirmation of the report of the jury in a drain case, that the damages awarded were arrived at by average.

. Error to Oakland; Smith, J.   Submitted March 8, 1901.   Decided July 10, 1901.

*Certiorari* by John R. Wixom to review the proceedings of A. B. Bixby, drain commissioner of Oakland county, in the matter of establishing a drain.   From an order dismissing the writ, plaintiff brings error.   Affirmed.   .

*James H. Lynch*, for appellant.

*A. & S. H. Perry*, for appellee.

Moore, J.   The following statement of facts is substantially taken from the brief of the attorney for appellant:

"Defendant in this case is drain commissioner for the county of Oakland, and successor in office of John Thayer.

In the spring of 1899, a petition regularly made and signed was filed with Thayer for the location and establishment of a certain drain in the township of Farmington, in said county. The drain commissioner took all the regular and necessary steps required by law, and petitioned the probate court for the appointment of at least three commissioners to determine the necessity for the proposed drain, and award the damages occasioned by the construction thereof. On the hearing of this petition, several of the landowners, among whom was the plaintiff, filed a demand for a jury. A jury was selected, viewed the premises, heard testimony, and retired to deliberate in secret, and made their report, which was filed with the probate judge on the 8th day of November, 1899. Objection was made by five of the owners of property traversed by said drain to the said report, which objections were sustained, and the same referred to the jury for correction. The amended report was filed with the probate judge on the 27th day of December, 1899, and a hearing fixed thereon, at which time several of the owners of land traversed by the drain, among whom was the plaintiff in this case, filed objections to said report. On the hearing of said objections, the objectors offered Joshua W. Bird, who was one of the jury whose report was offered for confirmation, as a witness in support of the objections filed, and for the purpose of showing that the said jury, in deliberating upon their verdict, arrived at the amount of damages to be awarded the respective persons found to be entitled thereto by agreeing that each juror should mark or write the amount of damages which he thought should be allowed the person whose damages they were at the time considering, and the amount so marked by each juror should then be added together, and the sum divided by 12, and the quotient thus obtained should be decided as the damages which would be awarded to such person, which agreement and mode of determining the respective damages was carried out by the said jury, and was reported to the court in their report offered for confirmation; to which testimony A. and S. H. Perry, who appeared for the drain commissioner for Oakland county, and also on behalf of Horace Green, one of the petitioners for the Minnow Pond drain in question, objected for a number of reasons,—among others, because it would be contrary to public policy to permit such evidence to be given. The objection was sustained, and on the 15th day

of January, 1900, an order was entered in said court confirming the amended report. On the 25th day of May, 1900, Mr. Bixby filed with the clerk of the circuit court for the county of Oakland his final order of determination. Plaintiff in this case then removed the case to the circuit court for Oakland county, alleging several matters of error, the eighth of which is 'that the said judge erred in rejecting the testimony of· witness Joshua W. Bird, offered to support the objections in opposition to the confirmation of the report of said jury.' On the hearing in the circuit court the writ of *certiorari* was dismissed, and from this order of the circuit judge the cause has been brought to the Supreme Court for review. It is agreed by counsel that the sole question which is presented to this court for determination is simply this: Was the court in error in refusing to permit the testimony of one of the jurors to impeach the report of the jury?"

The appellant admits that the evidence of a juror cannot be used to impeach the verdict of a common-law trial or petit jury, but he insists the jury in this proceeding is not a common-law petit jury, but is a common-law jury of inquest, and that the same rule should apply to the jury that would apply to commissioners appointed to condemn land. It is contended that their office is of the same character; citing *New Jersey, etc., Transportation Co.* v. *Suydam*, 17 N. J. Law, 25; *Canal Bank of Albany* v. *Mayor, etc., of Albany*, 9 Wend. 244; and other cases. Counsel for defendant say that, whether the jury in question is to be designated a jury of inquest or a common-law jury, it was, nevertheless, a jury with the functions of an ordinary jury, as far as such functions are applicable to the drain law; and that it would be against public policy to permit a juryman to nullify the action of the whole jury by testifying to the misconduct of the jury while in secret session deliberating on its verdict. They also urge, and we now quote from the brief:

"The jury provided for under the drain law is a jury with the functions of an ordinary common-law jury. The provisions of our State Constitution bearing upon the question involved are section 27 of article 6 and section 2 of article 18. The first of said sections provides:

127 MICH.—31.

" 'The right of trial by jury shall remain, but shall be deemed to be waived in all civil cases unless demanded by one of the parties in such manner as shall be prescribed by law.'

" The second section above referred to provides:

" ' When private property is taken for the use or benefit of the public, the necessity for using such property, and the just compensation to be made therefor, except when to be made by the State, shall be ascertained by a jury of twelve freeholders residing in the vicinity of such property, or by not less than three commissioners appointed by a court of record, as shall be prescribed by law.' .

" Randolph, in his work on Eminent Domain (section 316), says:

" 'The jury referred to in constitutional provision or statute is usually a common-law jury of 12 men. But, if a special jury is the tribunal in vogue at the enactment of the constitution, it may be presumed to be the jury intended.'

" The New York cases which have been cited at great length by opposing counsel in this case seem to be based upon the second proposition of Mr. Randolph above stated. They are based on the theory that in the State of New York there is no particular distinction between the functions of a jury and those of a commission when acting in condemnation cases. This court has expressly repudiated the New York cases as not applicable under the Constitution and statutes of this State, and has expressly followed the decisions of the State of Ohio upon the point involved as being more consistent with the intention of our State Constitution, and as better preserving the right of trial by jury in civil cases in this State."

We are favored with excellent briefs by counsel upon both sides. It is urged upon the part of the appellant that:

" It is well settled that the constitutional guaranty of the right of jury trial is a guaranty of a trial by a common-law petit jury of 12 members. But it is not true that this guaranty applies to proceedings under exercise of the power of eminent domain. The courts have not so recognized it, and the legislatures have proceeded in disregard of such a principle."

Counsel then traces the provisions of law in eminent-domain proceedings from the territorial act of 1805 to the

adoption of the Constitution of 1850.    Ho calls attention to
*Livingston* v. *Mayor*, etc., *of New York*, 8 Wend. 85,
22 Am. Dec. 622 (where Chancellor Walworth said:
" The provision of the constitution relative to the trial by
jury relates to the trial of issues of fact in civil and crimi-
nal proceedings in courts of justice, and has no relation
to cases of this kind.    Although damages have frequently
been ascertained by the oaths of 12 freeholders, both before
and since the adoption of the constitution, yet these are
not jury trials, within the spirit or meaning of that pro-
vision "); to *Canal Bank of Albany* v. *Mayor*, etc., *of
Albany*, 9 Wend. 244 (where it was decided that affida-
vits of the jurors could be received to impeach their ver-
dict); and to a number of Michigan cases,—and insists
that a very different rule obtains in a common-law jury of
inquest from the rule governing a common-law trial jury.
Counsel makes the following quotation:

" The right to trial by jury meant by the constitutional
provision is the common-law and historic right declared
by the common-law courts, and perpetuated by the *Magna
Charta.*    The right to trial by jury in cases of the seizure
of private property for public uses did not exist at common
law."    Elliott, Roads & S. (2d Ed.) § 196.

The precise question involved here has, so far as we
know, never been before this court.    In Elliott, Roads &
S. (2d Ed.) § 279, the following language is used:

" The landowner is not always entitled to a jury as a
matter of right, but, where the constitution provides that
the damages shall be assessed by a jury, a statute provid-
ing for an assessment by a different tribunal will be void.
Where a jury is required by the constitution, and there
are no explanatory words, it is held to require a jury of 12
men; for the general rule is that the word 'jury' means
the tribunal established by the common law."

We have already quoted the provisions of our Constitu-
tion as to the right of trial by jury in proceedings to con-
demn lands.    The absence of some provision like section 2
of article 18 in the constitutions of New York and New
Jersey may account for the decisions in those States; but,

whether this is so or not, our Constitution has expressly provided for a jury trial, without using explanatory words, in condemnation proceedings. Applying the rule as stated in Elliott, this means a common-law jury.

In *McRae* v. *Railroad Co.*, 93 Mich., at page 403 (53 N. W. 562), where there is a discussion of the right of trial by jury, the following language is used:

"It [the statute] does not preserve the common-law right of a unanimous verdict of a jury, which the Constitution recognizes by section 27, art. 6, which provides that 'the right of trial by jury shall remain.' Mr. Justice COOLEY, speaking of this clause, in *Tabor* v. *Cook*, 15 Mich. 322, 325, says:

" 'The intention here is plain to preserve to parties the right to have their controversies tried by jury in all cases where the right then existed; * * * and suitors cannot constitutionally be deprived of this right, except where, in civil cases, they voluntarily waive it by failing to demand it in some mode which the legislature shall prescribe.'

"Mr. Justice CHRISTIANCY, in *Hill* v. *People*, 16 Mich. 351, 355, says:

" 'Our Constitution, in retaining the right of trial by jury, tacitly refers to and adopts the common-law number.'

"In *Van Sickle* v. *Kellogg*, 19 Mich. 49, 52, COOLEY, C. J., in speaking of this clause of the Constitution, says:

" 'The constitutional principle which underlies the right is one to which the people governed by the common-law have clung with perhaps more tenacity than to any other; and they have justly regarded it as not preserving simply one form of investigating the facts in preference to another where both would have obtained the same result, but as securing the mode of trial which was best calculated to insure a just result, and to secure the citizens against the usurpation of authority, and against arbitrary or prejudiced action on the part of single individuals who chanced to be possessed of judicial power.'

"In *Underwood* v. *People*, 32 Mich. 2 (20 Am. Rep. 634), Mr. Justice CAMPBELL says:

" 'The right of trial by jury is secured by constitutional provisions, and it would not be competent to make any substantial changes in its character.'

"And again, in *Paul* v. *City of Detroit*, 32 Mich. 108, 114, the same learned justice, speaking of the mode of taking land for public uses prior to the adoption of the present Constitution, says:

" ' The Constitution (article 18, § 2) has changed this by requiring the whole subject to be determined by a jury of freeholders, so that each case shall be determined by a separate tribunal, summoned expressly for the purpose, who must be unanimous in their views before any land can be taken; who must act openly, and before all concerned, in hearing and receiving testimony; who cannot listen to private persuasion, and where any attempt to influence them will subject the offender to severe and disgraceful punishment. All these safeguards are implied in the use of the term "jury; " and no action, by laws or by proceedings under them, can be maintained if any of these securities are impaired or disregarded.'

"In *Swart* v. *Kimball*, 43 Mich. 443, 448 (5 N. W. 635, 637), Mr. Justice COOLEY, again speaking of section 27, art. 6, providing that 'the right of trial by jury shall remain,' says:

" ' What right ? Plainly, the right as it existed before; the right to a trial by jury as it had become known to the previous jurisprudence of the State. * * * The right is not described here; it is not said what shall be its incidents; it is mentioned as something well known and understood under a particular name; and, by implication at least, even a waiver of its advantages is forbidden.'

"Mr. Justice Ranney, in *Work* v. *State*, 2 Ohio St. 303 (59 Am. Dec. 673), speaking of a like provision of their constitution, says:

" 'An institution that has so long stood the trying tests of time and experience, that has so long been guarded with such scrupulous care, and commanded the admiration of so many of the wise and good, justly demands our jealous scrutiny when innovations are attempted to be made upon it.'

" It is too well settled to need further citation of authority or argument to show that this part of the Constitution (article 6, § 27), providing that 'the right of trial by jury shall remain,' means the right as it existed at the common law, which was well understood in the previous jurisprudence of the State at the time of the adoption of the Constitution in 1850. This right was a trial by a jury of 12 good men and true, whose determination must be unanimous upon the rights of the parties. This the Constitution

of 1850 preserves, except that under section 46, art. 4, the legislature may authorize a less number than 12."

In *Kress* v. *Hammond*, 92 Mich. 372 ( 52 N. W. 728 ), it was held that the verdict of the jury in a proceeding to condemn lands for a drain must be unanimous.

In *Serrell* v. *Patterson*, 107 Mich. 234 (65 N. W. 107), it was shown how the functions of a commission in such a case differ from the functions of a jury. In that case Mr. Justice LONG uses this language:

"In *Kress* v. *Hammond* it was held that this constitutional provision requires the unanimous verdict of the jury, as the word 'jury' means a .common-law jury, with all the incidents thereof, and that, therefore, a unanimous verdict was required."

In Thomp. & M. Juries, § 440, it is said:

"Upon grounds of public policy, the courts have almost universally agreed upon the rule that no affidavit, deposition, or other sworn statement of a juror will be received to impeach the verdict, to explain it, to show on what grounds it was rendered, or to show a mistake in it; or that they misunderstood the charge of the court; or that they otherwise mistook the law, or the result of their finding; or that they agreed on their verdict by average, or by lot."

Following this language is a long list of cases showing this to be almost the universal rule. We think it a rule which applies to a jury summoned under the provisions of section 2, art. 18, of our Constitution.

Judgment is affirmed.

The other Justices concurred.