## MATILDA E. GREEN vs. WM. H. PURNELL, Comptroller of the Treasury.

The Comptroller of the Treasury, being clothed by the constitution with the exclusive power of *adjusting* and *settling* public accounts, is not a mere *ministerial* officer, and cannot, therefore, be compelled, by *mandamus*, to perform any act, in the discharge of his duties, which involves the exercise of *judgment* and *discretion*.

A *mandamus* cannot issue in any case where discretion and judgment are to be exercised by the officer; it can be granted only where the act required to be done is merely ministerial, and the party is without any other adequate remedy.

The question, who is entitled to an appropriation in the general appropriation act, of a certain sum for "the rent of house for fire-engine," under a certain state of facts, and under certain acts and a resolution of the Legislature, is a question for the Comptroller to determine, in the exercise of his *judgment* and *discretion*.

APPEAL from the Circuit Court for Anne Arundel county.

This appeal is taken from an order of the court below, dismissing a petition filed by the appellant for a rule upon the Comptroller to show cause why a *mandamus* ought not to be issued, requiring him to issue his warrant upon the Treasurer for payment to the petitioner of the sum of $100, for rent of certain premises by her to the State, for the use of the State engine. The facts of the case are fully stated in the opinion of this court, as also in the following opinion of the court below, (BREWER, J.,) delivered upon passing the order appealed from:

"This is an application for a *mandamus* to the Comptroller of the Treasury to pay to the petitioner the sum of $100, which is claimed to be the rent for the year 1857, of an engine house rented by her to the State. To the rule to show cause, the defendant put in an answer, and the matter has been submitted in that state of the case, without any traverse or testimony.

"The facts, as admitted by the answer and alleged by the defendant, appear to be, that resolution No. 9, of the session of 1849, appropriated to Mrs. Matilda E. Green $50, for the rent of an engine house, to be paid on the 1st of December of

that year, and for every year thereafter, so long as the same should be rented to the State, but does not state the day of the commencement or end of the renting. Regular successive appropriations were made every year, of the same sums, for the rent of an engine house, without specifying to whom, until 1856, when $100 was appropriated, also without specifying to whom it was to be paid. Mrs. Green received the rent of $50 up to the 1st of December 1856, and her house was occupied by the State up to the 1st of January 1857, when it was removed by the Librarian, who, by the act of 1856, ch. 314, had the superintendence of the engine, and placed it elsewhere.

"The petitioner's counsel considers the resolution of 1849 as the acceptance of a lease from Mrs. Green of her engine house by the State for the term of one year, and so on from year to year, at $50 per annum, and which could not be terminated by the State without legal notice to quit. Whether the resolution could be considered as a contract of that nature at the commencement, or could not be terminated by the State without the legal notice required on such contracts of renting between individuals, or whether it was not terminated by the act of 1856, ch. 328, appropriating double the amount for the same purpose, without specifying to whom it should be paid, it seems to me unnecessary to determine. This court cannot entertain suits against the State by individuals, in the usual or ordinary form, or *by mandamus* to compel the State, through any of its public officers, to fulfil its contracts. Where an unquestionable appropriation has been made by the State, of any portion of its funds, to be paid to any individual, by the constitution, laws and resolutions of the Legislature, the Comptroller is bound to issue his certificate to the Treasurer for its payment, and if he refuse, he may be compelled by *mandamus*. But when any claim is made against the State, on contract or otherwise, it is the duty of the Comptroller to investigate it, and to determine whether he has sufficient authority given him to decide upon its validity, and to issue a certificate for its payment. This court cannot undertake to sit in judgment upon his decisions.

"The question, then, is, whether the various acts and reso-

Green *vs.* Purnell, Comptroller of the Treasury.

lutions of the Legislature, as referred to, can be considered as an appropriation of the sum of $100 to be paid to Mrs. Green, for the use of the engine house for the year 1857? The resolution of 1849 appropriates $50 only for the rent for that year, positively to be paid to her, and the same sum for every subsequent year that the house should be rented by the State from her. The house was rented and occupied up to 1857, and the rent paid accordingly. The act of 1856 appropriates $100 for the payment of rent for the engine house for 1857, but does not direct it to be paid to Mrs. Green, nor does it refer to the resolution of 1849, or appear to be connected with it, the latter being for $50, and the former for $100. If rented by her under the act, it would be a new renting, on different terms.

"The Librarian, who had charge of the engine, would seem to be the proper person to rent the house, and to certify the fact in such form as would satisfy the Comptroller. Admitting the resolution of 1849 to be still binding on the State as a renting, for want of notice to quit, it could only be an appropriation for the sum there specified to be paid under that renting and appropriation, and the petitioner could only claim the $50. If she claims under the act of 1856, it is a new appropriation, and there must be a renting—an actual renting—not by implication or construction. All the appropriations for this purpose, since 1849, depended on the subsequent renting from her. The rent was then payable to her by the terms of the resolution. After the act of 1856, there was no appropriation of money to any individual; it was appropriated to a purpose. The individual to receive it depended his right to do so upon a contract to be made thereafter with some person authorized to rent. That person, I think, was the Librarian; he was authorized to rent the engine house, and to direct the rent to be paid to the landlord, or to receive it and pay it to him. The landlord had no right to require the Comptroller to pay the money to him, as an actual appropriation by law to him. If the rent is claimed from the State as on a contract with the State, or its legally authorized agent, and not an appropriation to the claimant, the proper accounting officer must

judge of its validity. If he considers it invalid, and declines to pay, the claimant must resort to the appropriating department of the State. There is no provision made for suing the State in any form."

The cause was argued before LE GRAND, C. J., ECCLESTON and BARTOL, J.

*Thos. S. Alexander* for the appellant:

1st. The house and premises having been rented from the appellant by the Legislature, from year to year, so long as both parties should please, it was not competent for any other authority than the Legislature to determine that tenancy.

2nd. Under the terms of the renting, the tenancy was determinable only after six months' notice given prior to the end of a given year.

3rd. The year commencing from the 1st day of December, and terminating with the same day in the succeeding year, and it being admitted that the State remained in possession of the premises until the 1st day of January 1857, the appellant is entitled to treat the State as her tenant for the whole year 1857, and, therefore, to claim the sum of $100 appropriated by the act of 1856, ch. 328, for rent of house for State engine.

4th. There being an express appropriation of the money *for the object*, and clear evidence of the obligation of the State to pay the money to the appellant; it was the duty of the Comptroller to issue the warrant in her favor, as demanded by her, and on his refusal to do so, he may be compelled thereto by *mandamus.* 4 *Md. Rep.*, 191, *Thomas vs. Owens.* 12 *Pet.*, 609, *Kendall vs. Stokes.* 14 *Pet.*, 497, *Decatur vs. Paulding.* 17 *How.*, 225, *United States vs. Seaman. Ibid.*, 284, *United States vs. Guthrie.* 31 *Eng. C. L. Rep.*, 72, *King vs. Lords Commissioners of the Treasury.* 4 *Eng. Law & Eq. Rep.*, 277, *Regina vs. Lords of the Treasury.*

*N. Brewer, of Jno.*, for the appellee:

1st. The act of 1856, ch. 314, gives to the State Librarian the custody and superintendence of the engine, and authorizes

Green *vs.* Purnell, Comptroller of the Treasury.

him *to rent the engine house.* The language of the act, and the rules by which statutes are to be interpreted, require this construction to be given it. 3 *G. & J.*, 66, *Blizzard vs. Jacobs.* 2 *H. & J.*, 167, *Beall's Lessee vs. Harwood.* 4 *G. & J.*, 1, *Canal Company vs. The Rail Road Company.*

2nd. The act of 1856, ch. 328, appropriates $100 for the payment of the rent of engine house for the year 1857. The appropriation is made, not to be paid to Mrs. Green, or any other individual, under this act, but the money is appropriated to a purpose, and the individual to secure it must do so through a contract with the Librarian, who was authorized to rent the engine house, and direct the rent to be paid to the landlord, or to receive it and pay it to him.

3rd. The petitioner has shown no legal claim to the appropriation of $100 made for the rent of house for fire engine for the year 1857, and had no right to require the Comptroller to pay the money to her, as an actual appropriation to her.

4th. This action is a suit against the State for an alleged violation of contract, and this court cannot entertain suits against the State by individuals in the usual or ordinary form, or by *mandamus*, to compel the State, through any of its public officers, to fulfil its contracts.

ECCLESTON, J., delivered the opinion of this court.

The appellant filed a petition in the circuit court for Anne Arundel county, praying for a rule upon the Comptroller of the Treasury to show cause why a *mandamus* should not be issued, commanding him to grant the petitioner a warrant upon the Treasurer of the State, requiring and authorizing him to pay unto the petitioner the sum of one hundred dollars, "which is in and by the act of the General Assembly of Maryland, passed at January session 1856, chapter 328, appropriated for the rent of house for fire-engine."

The rule to show cause was granted, and the Comptroller answered the same. Without further proceedings, the matter being submitted by the parties, the court passed an order dismissing the petition; from which order this appeal is taken.

The appellant's counsel has referred to the case of *Thomas*

*vs. Owens*, 4 *Md. Rep.*, 189, as an authority which fully sustains the present application. But we do not so consider it. That is a very different case from this. There the petition asked for a *mandamus* requiring the Treasurer of the State to pay the Comptroller, upon his warrant, the amount of his salary, which is regulated by the constitution, and, of course, duly appropriated by law.

At page 228, the court refer to the 2nd and 3rd sections of the 6th article of the constitution, for the purpose of defining the principal duties of those two officers. It is there said: "From these two sections it appears, 1st, that it is the duty of the Treasurer to *disburse* the public moneys on the *warrant of the Comptroller, and not otherwise;* and 2nd, that the duty of *adjusting* and *settling* all public accounts is imposed upon the Comptroller.

"Looking to these provisions of the constitution, it appears to us that the power of *adjusting* and *settling* public accounts is *exclusively* conferred on the Comptroller, and, in this particular, it is the duty of the Treasurer to respect such adjustment and settlement, and, on warrant of the Comptroller, to pay the amount."

The court further say: "The Comptroller is chosen *immediately* by the people; the Treasurer by their representatives; and the former have deemed it advisable to entrust the officer of their *own choice* with duties formerly performed by the Executive and Treasurer."

It is likewise said: "Where there is an appropriation, and a proper warrant drawn by the Comptroller and presented to the Treasurer, his duty is purely *ministerial;* all he has to do in such a case, is to count out the money; an act ministerial, and nothing else. If he refuse to perform it, the law will compel him." This very explicitly announces the character in which the Treasurer is called upon to act, where there is an appropriation, and the Comptroller has issued his warrant for the same. But the court have drawn a manifest distinction between the authority and duties of those two officers. And surely the language used in reference to the adjustment and settlement of public accounts by the Comptroller, cannot be

understood as meaning, that in the discharge of such duties he merely acts ministerially; for they require the exercise of judgment and discretion.

In the case of *Amos Kendall, Postmaster General of the United States, vs. Stokes,* 12 *Pet.,* 524, the Supreme Court held, that by *mandamus* the Postmaster General might be compelled to allow Stokes a credit, the amount of which had been regularly ascertained by an award of the Solicitor of the Treasury, under authority of an act of Congress. The court did not consider the *mandamus* as designed to control the Postmaster General in the discharge of his official duties, partaking in any respect of an executive character; but to enforce the performance of a mere *ministerial* act, which neither he nor the President had any authority to deny or control.

That case was referred to in *Decatur vs. Paulding,* 14 *Pet.,* 516, 517, where it is explicitly stated there was a difference of opinion in the Supreme Court in the previous case, in relation to the power of the circuit court to issue the *mandamus.* But respecting the act to be done, there was no difference of opinion. The court were unanimously of opinion that in its character the act was merely ministerial.

The case of *Kendall vs. Stokes,* was relied upon as authority to sustain the application for a *mandamus* in *The United States vs. Seaman,* 17 *How.,* 225, but without success. The Supreme Court speak of the award in favor of Stokes, made by the Solicitor of the Treasury in that case, as an official act authorized by act of Congress. And the award having determined the amount of credit to which Stokes was entitled, and the same being reported to the Postmaster General, the court say: "He was merely to record it. His duty under that act of Congress, was like that of a clerk of a court, who is required to record its proceedings; or of an officer appointed by law to record deeds which a party has a right by law to place on record; or of the Register of the Treasury of the United States to record accounts transmitted to him by the proper accounting officers to be recorded. The duty, in such cases, is merely ministerial; as much so as that of a sheriff or marshal to execute the process of a court."

The court then add: "This was the point decided in *Kendall vs. Stokes,* and the subsequent cases have all been upon the same principles. They are in no degree in conflict with it; on the contrary, they have followed it."

On page 230, of 17 *How.,* the Chief Justice, speaking for the court, refers to various cases decided by the Supreme Court, in regard to the power of the circuit court of the district to issue writs of *mandamus* to an officer of the Government in Washington. The rule to be gathered from all these cases, he considers to be too well settled to need further discussion. He then says: "It cannot issue in a case where discretion and judgment are to be exercised by the officer; and it can be granted only where the act required to be done is merely ministerial, and the relator without any other adequate remedy." *Kendall vs. Stokes* is the only case referred to in which the application for the writ was successful; and that application the court sustained, because the Postmaster General was required to do an act in which he was not authorized to exercise any discretion or judgment.

In the opinion of the court, as delivered by the Chief Justice, in *Decatur vs. Paulding,* at page 515, it is said: "The court could not entertain an appeal from the decision of one of the Secretaries, nor revise his judgment in any case where the law authorized him to exercise discretion or judgment. Nor can it, by *mandamus,* act directly upon the officer, and guide and control his judgment or discretion in the matters committed to his care, in the ordinary discharge of his official duties." See what is said of *Mrs. Decatur's case,* in *Brashear vs. Mason,* 6 *How.,* 101.

The following we understand to be a correct statement of the facts in the present case:

By resolution No. 9, passed on the 29th of January 1850, during the December session of 1849, the Legislature directed the Treasurer "to pay to Mrs. Matilda E. Green the sum of fifty dollars, on the first day of December, one thousand eight hundred and fifty, for the yearly rent of a house for the State engine, and also the same sum on the first day of December in each and every year thereafter, so long as the said house is

rented by this State from the said Matilda E. Green.'' Neither this resolution, or any thing else, states the day on which the renting commenced. By different acts of the Legislature, regular appropriations were made for the rent of an *engine house*, without specifying to whom to be paid. Mrs. Green received her rent up to the 1st of December 1856, inclusive. Her house was occupied by the State up to the 1st of January 1857, when the fire engine was removed by Llewellyn Boyle, who, as superintendent of the same, placed it elsewhere.

By the act of 1856, ch. 314, Llewellyn Boyle, the appointee of the Legislature, as State Librarian, was charged with the general superintendence of the public buildings and grounds within the State House circle, as well as the *fire apparatus* belonging to the State.

In the act making appropriations for the support of government, passed at the session of 1856, ch. 328, the Legislature appropriated ''to the rent of house for fire-engine, one hundred dollars,'' not saying to whom it was to be paid.

The appellee says, in his answer, that on the 1st of January 1857, he received notice in writing from Llewellyn Boyle, the superintendent, that he had rented of J. Wesley White, of Annapolis, an engine house, where the State engine would be kept in the future; which notice is filed as part of the answer.

The appellee also says, he has been notified by Llewellyn Boyle, the superintendent, ''not to issue a warrant for the rent of a house for the State engine, for the year 1857, to the said Matilda E. Green, and has authorized and directed this respondent to issue the same to John W. White, of Annapolis.''

On the 2nd of December 1857, Mrs. Green applied to the Comptroller for his draft or warrant upon the Treasurer for the payment of the sum of $100, alleged by her to be due the day previous, for the rent of her house. But the Comptroller refused to issue a warrant, denying her right to claim one.

The act of 1856, ch. 328, under which the appellant claims $100, is not, in terms, an explicit appropriation of that, or of any other sum in her favor. Her name is not mentioned

43    v. 12.

therein.   And the act simply appropriates $100 "to the rent of house for fire engine."

The appellant contends that the resolution of 1849 created a lease between the State and herself, which could not be terminated by the State without such previous notice of an intention to quit, as the law requires in similar cases of renting; that she had received no sufficient notice to terminate the lease sooner than the 1st of December 1857.   And inasmuch as the engine had been kept in her house during the month of December 1856, she insists that although the engine may have been removed on the 1st of January following, and was subsequently kept elsewhere, still the State was bound to pay her a year's rent, ending on the 1st of December 1857, and therefore she claims the $100.

But conceding that the resolution alluded to did create a lease, which was not legally ended until the date stated above, it is very certain the annual rent provided for in that lease was only fifty dollars, and not *one hundred*.   And we have seen that the Comptroller had been notified by the superintendent of the engine that he had rented a house for the same, for the year 1857, from J. W. White, who was entitled to the rent, and that Mrs. Green was not.

These remarks are not to be understood as any intimation of an opinion on our part that the appellant is not entitled to compensation from the State; but the views expressed are intended to show that she is not entitled to a *mandamus*.   We think her application does not require of the Comptroller a merely ministerial act, but under the circumstances, the question whether he should grant her a warrant for her alleged claim of $100, necessarily involves the exercise of judgment.   And believing this to be the case, we must affirm the order of the circuit judge.

*Order affirmed.*

( Decided July 20th, 1858.)

Le Grand, C. J., dissented.

I assent to the correctness of the principles set out in the opinion of my brothers, and also to the accuracy of its narrative

of the facts of the case, but dissent from the application given to them. If there was a contract with Mrs. Green for the use of her building, it was no more competent to the agent of the State to terminate it contrary to the law, than it would have been to any other person to have done so. The constitution of the United States is as binding on the several States as on individuals; neither can impair the obligation of a contract. As I understand the opinion of a majority of the court, it does not deny the validity of the claim of Mrs. Green, but, on the contrary, admits it. The objection is only as to the *remedy* invoked, to wit, a *mandamus;* a majority of the court holding that this writ cannot go against the Comptroller on a case like the present, and that the claimant must appeal to the Legislature. This opinion is based on the idea that the duty which the Comptroller has to perform in regard to this particular claim is judicial, not ministerial in its character. If this were so, I would concur in the conclusion to which they have come, but I am very clear in my conviction that this application is wholly free from the objection urged against it.

I of course hold, that the State cannot be sued, but this is not a suit against the State. The case is simply one of an appropriation which the Comptroller, in obedience to the legislative will, is bound to pay to the party entitled to it. So far as the performance of his duty is concerned, in this regard, there is nothing requiring of him the exercise of the judicial function. I grant, where he is required to exercise a judicial discretion, that his conduct cannot be controlled by a writ of *mandamus;* but, to my mind, it is palpably plain that the Comptroller has no right to withhold the payment of an appropriation, and that if he does so, that he can not only be coerced by *mandamus,* but is liable on his official bond for non-performance of duty. To allow to the Comptroller, on his mere caprice, to withhold the payment of all appropriations, would be to make him the supreme authority in the State; in truth, it would be to confer upon him the power to stop the wheels of government, and bankrupt its credit. He has no such power. He is only exempted from the control of the courts when he is in the exercise of a judicial power; but

when he has nothing to do but a ministerial act, he is just as liable to their decisions as any other public officer. Here his whole duty was purely ministerial, nothing more. The engine was in the house of the appellant, where it had been for years, when the Legislature appropriated one hundred dollars *"to the rent of house for fire engine."* What house?

The State was the tenant of the appellant, recognized as such not only by past payments of rent, but by express legislative declaration. It not only had not the power unlawfully to terminate the tenancy, but evinced, on the contrary, the strongest disposition to continue it by increasing the rent. The tenancy being fixed, and the rent appropriated, there was nothing to be done by the Comptroller but to issue his warrant. He was called upon to do nothing judicially; his required action was wholly and only ministerial, and, as such, liable to be commanded by the process of the courts. This is a case where it is conceded the claimant is entitled to the money claimed, and where an appropriation has been made, and yet the refusal of the Comptroller, under the decision of my brothers, to pay the money, forces the appellant to apply to the Legislature for redress, which, if granted, the Comptroller could again defeat the legislative will, by refusing a compliance therewith. This, in my judgment, is the effect of the decision of a majority of the court. To such a doctrine I cannot yield my assent.