FRANK BROWN, Governor of Maryland, *vs.* DANIEL ·J. BRAGUNIER.

*Mandamus to Governor—Contested election—Remedy at Law—Sections* 69 *and* 94 *of Article* 33 *of the Code— Act of* 1890, *ch.* 624,

Mandamus is a prerogative writ; and unless the right which the relator seeks to enforce is clear and unequivocal, and the correlative duty which the respondent refuses to perform is purely ministerial, and there is no other adequate remedy at law, it will not be granted.

Mandamus does not lie to compel the Governor of Maryland to issue a commission for the office of County Commissioner to the plaintiff, under section 69 of Article 33 of the Code, as amended by the Act of 1890, ch. 624, providing that the judges of election in the several election districts shall "cast up the whole vote of all the districts", and "make out two plain, fair, and distinct statements and certificates of the number of votes· which shall have been given for each candidate," and that "from the returns so made the Governor shall issue commissions to the different persons elected," where the certificate of the judges fails to state that they cast up the whole number of votes given in said districts according to the certificates made out by them, and attested by the clerks, on the day of election, and also omits the formal declaration as to who was elected, and the plaintiff has an adequate remedy at law, under section 94 of the said Article, under which he had already instituted proceedings to contest the election of his opponent, and they were pending at the time.

Appeal from the Circuit Court for Anne Arundel County.

The case is stated in the opinion of the Court.

The cause was argued before ROBINSON, C. J., BRYAN, FOWLER, PAGE, McSHERRY, BOYD and BRISCOE, J.

*William T. Brantly,* and *John Prentiss Poe, Attorney General,* for the appellant.

*J. Wirt Randall,* and *Daniel R. Magruder,* for the appellee.

McSHERRY, J., delivered the opinion of the Court.

At the general election held on the Tuesday after the first Monday of November, eighteen hundred and ninety three, among the officers voted for in Charles County was a County Commissioner. Under the local law (Act of 1892, ch. 569) the board of County Commissioners of that county consists of three members, but the term of only one of them had then expired, and consequently but one vacancy existed to be filled at that election. Joseph H. Penn was the candidate of one of the political parties for the office of County Commissioner, and Bragunier, the relator, was the candidate of the opposite party for the same office. The judges of the election made a return to the Governor of the number of votes cast in the county, and acting upon that return the Governor issued a commission to Penn, who thereupon qualified according to law, and duly entered upon the discharge of his duties. Thereafter Bragunier, who had also instituted proceedings in the Circuit Court for Charles county under *Art. 33, sec. 94* of the Code, to contest the election of Penn, filed in the Circuit Court for Anne Arundel county a petition against the Governor of the State, praying that a writ of *mandamus* might be granted compelling the Executive to issue a commission to the relator for the office then held by Penn under the outstanding commission previously issued to the latter. A majority of the Judges of the Circuit Court for Anne Arundel county (ROBERTS, C. J., dissenting) directed the writ of *mandamus* to go as prayed, and from that order the Governor has appealed.

The remedy by *mandamus* is not one which is accorded *ex debito justitiæ.* The writ is a prerogative one; and unless the right which the relator seeks to enforce is clear

and unequivocal, and the correlative duty which the respondent refuses to perform is purely ministerial, and there be no other adequate remedy at law, it will not be granted. *Weber et al. vs. Zimmerman,* 23 *Md.,* 45; *Hardcastle vs. Maryland & Delaware Railroad Co.,* 32 *Md.,* 32 ; *Legg et al. vs. Mayor, &c. of Annapolis,* 42 *Md.,* 203 ; *Marbury vs. Madison,* 1 *Cranch,* 137. In addition to this it is well settled, as it must be from the very nature of the proceeding itself, that the writ will never be granted when, if issued, it would be nugatory and unavailing. *Tapping on Man.,* 17; *State, ex rel. O'Neill vs. Register et al.,* 59 *Md.,* 283; *Wells vs. Comm'rs of Hyattsville,* 77 *Md.,* 125. That the Governor of the State may, if he refuses to perform a ministerial function, be reached by the writ is no longer an open question in Maryland. *Magruder vs. Swann,* 25 *Md.,* 173 ; *Groome vs. Gwinn,* 43 *Md.,* 572. Whilst respect for a co-ordinate department of the State government suggests that it must be assumed the Executive would promptly comply with the mandate of the Courts, there would be no difficulty in finding appropriate and effective means to enforce obedience if occasion should require it.

Under sec. 11, Art. 4 of the Constitution, and under the statutes made in pursuance thereof, all election returns, except those for State's Attorneys and Governor, are required to be certified to the Governor. The method of that certification is minutely and clearly defined in the Code, and in subsequent Acts of Assembly amendatory thereof. To these some particular reference must now be made, as upon their provisions the pending controversy mainly turns.

By *sec.* 66 *of Art.* 33 *of the Code,* it is provided that immediately upon the close of the polls and as soon as the ballots have been counted, and the number for each candidate reckoned up and ascertained, the judges of election of each district shall make out under their hands, attested by the clerks of election, on the books of the polls, two

plain, fair and distinct certificates of the number of votes which shall have been then and there given for each candidate, distinguishing the office for which he has been voted. The numbers of the votes received by each candidate are required by *sec.* 67 to be expressed in *words at length,* and not in figures. By *sec.* 68, as amended by the *Act of* 1890, *ch.* 624, the presiding judges of election in the several election districts are required to meet at the Court House within seven days after each election "with the books of the polls and the certificates aforesaid." The 69*th sec.* as amended by the same Act, directs these judges, when so assembled, to "cast up the whole vote of all the districts," and to "make out two plain, fair and distinct statements and certificates of the number of votes which shall have been given for each candidate"; one of which shall be delivered to the clerk of the Circuit Court, and the other, except in elections for Governor and State's Attorney, shall be transmitted to the Governor; and "from the returns so made the Governor shall issue commissions to the different persons elected." *Sec.*70 gives the *form* of the certificates provided for by the preceding section. Before quoting this certificate, it is proper to say that as originally framed by the *Act of* 1805, *ch.* 97, *sec.* 15, and amended by the *Act of* 1860, *ch.* 10, and incorporated in the Codes of 1860 and 1888, it did not require, except in elections for sheriff, that the number of votes received by each candidate should be stated, but only directed the return judges to certify that "it appeared that ————— has the greatest number of legal votes for ————." The *Act of* 1890, *ch.* 624, required this certificate to be modified so as to conform to the provisions of that statute; and as those provisions direct the certificate to state the number of votes which shall have been given for *each* candidate, the certificate, instead of only declaring that a particular person received the greatest number of legal votes for a designated office, must now set forth the vote

of each candidate for that office. This is the only modification made by the Act of 1890 in the *form* of the certificate.

The certificate as now modified by the Act of 1890, and as required by the law to be made up and signed, and to be transmitted to the Governor, after making recitals we need not allude to, sets forth that the subscribers attending judges at the close of the election * * * * "having this day assembled * * * * with the books of the polls, on which are endorsed the several certificates agreeably to law, *and having cast up the whole number of votes given in said districts according to the certificates made out on the day of election by the judges,* it appears that ———— has ———— number of legal votes for ———— and that ———— has ———— number of legal votes for ————, whereupon we do determine, declare and return that the said ———— is duly elected."

Now, from these several provisions of the Code, it seems to us quite obvious that the plain duty of the judges of election who assemble to make up and certify the returns from all the election districts of a county to the Governor, is to cast up the whole number of votes given in said district *according to the certificates* made out on the day of the election by the judges and attested by the clerks, under *sec.* 66 ; and that the statute confers upon these return judges no power to alter, to change, or revise in any way the results disclosed by the certificates appended to the poll books. If errors are apparent in these district certificates, the mode to correct them is by contesting the election in the appropriate forum. In such a contest the true state of the vote can always be ascertained, and the inaccuracies of the certificates can be made to yield to the footings of the tallies, or to the actual results of the election as disclosed by a recount of the ballots. The legislature has not seen fit, either by express enactment, or by implication, to vest in the return judges, the power or au-

thority to make these district certificates conform to the
footings of the tallies if there happens to be a variance
between them; nor has it given to these ministerial officers
power to ascertain the state of the polls in any other way
than by casting up the whole number of votes according
to the certificates made out on the day of the election.  If,
in doing this perfectly plain duty, they encounter discrep-
ancies between the certificates and the tallies, they must
follow the certificates, and leave to other tribunals espec-
ially entrusted with the means to discover the truth, the
duty to apply the appropriate remedy for any wrong which
may result from an observance of the mandate of the stat-
ute.   Considerations of inconvenience or supposed hard-
ship cannot prevail against the letter of the written law,
nor override its obvious spirit and purpose; and it is in-
finitely better that some few individuals should, by a
strict construction of the statute be driven into the Courts
for a vindication of their claim to the possession of a public
office, than that the will of the people should be constantly
in peril of being thwarted by conceding to return judges
the power to change the results ascertained and certified
to at the close of the polls.

The character of the return which the law requires to
be made to the Governor being thus distinctly defined by
the statute, it is clear that if no such return was in fact
made, the relator's right to a commission has not been es-
tablished, and the Governor's duty to issue one to him has
never arisen.   What, then, is the return upon which the
relator relies?

It recites that the return judges met, &c., * * * * "with
the books of the polls on which are endorsed the several cer-
tificates agreeably to law,*and in which appear separately
the total vote cast in said districts, and the number of
votes cast in each district for each candidate voted for
at said election, from the tallies kept by the tally clerks,
duly marked and endorsed thereon,* it appears from said

certificate that Marion de Kalb Smith received 1341 votes for Comptroller of the Treasury of the State of Maryland; and that James T. Perkins received 1301 votes for said office of Comptroller of the Treasury of the State of Maryland; and that * * * * and that Joseph H. Penn received 1264 votes as County Commissioner for Charles County; and that Daniel J. Bragunier received 1274 votes as County Commissioner for Charles county "; and so on down to the end of the ticket voted for. The certificate then proceeds: "But it appears, after casting up the whole vote of all the districts of said county from the said tallies, that Marion de Kalb Smith, &c., &c., * * * * and that Joseph H. Penn received 1291 votes as County Commissioner of Charles county; that Daniel J. Bragunier received 1277 votes as County Commissioner of Charles county," and so on down to the end of the ticket voted for. But the concluding clause prescribed by sec. 70, to-wit: "whereupon we do determine, declare and return that the said ——— is duly elected," is wholly omitted.

Now, the words which we have above put in *italics* are not to be found in the certificate formulated by *sec.* 70; and the material and essential statement that the return judges had "cast up the whole number of votes given in said districts according to the certificates made out on the day of election by the judges," is not inserted at all. There is no certification by the return judges that they had done that which, as we have already pointed out, the law imperatively required them to do, namely, to cast up the whole number of votes given in said districts according to the certificates made out by the judges and attested by the clerks on the day of the election. It is only upon returns so made up and so certified that the Governor can, under *sec.* 69, issue a commission. It does not appear from the certificate which the return judges forwarded to the Governor that the number of votes which they certify Bragunier received was ascertained by casting up the numbers

written out in words in all the certificates signed and attested on the day of the election. And in no other way could Bragunier's aggregate vote have been lawfully ascertained and determined by the return judges of the election. They do not even certify that they added or cast up the number of votes shown by these certificates. This part of their certificate can only be treated as a compliance with the law by assuming or inferring that that was done which ought to have been done, but which the language of the certificate fails to show was in fact done. It may be that it appears from the certificates that Penn received 1264 votes and Bragunier 1274 votes, without its being true that the same result would have been exhibited had the numbers *in all* the certificates been cast up. The form given in *sec.* 70 need not be pursued literally, but its substance must be faithfully preserved, otherwise the door will be opened to the successful perpetration of frauds upon the elective franchise. The statute did not design to leave any thing to conjecture or inference in these election returns, and a certification which requires either conjecture or inference to supply omissions of material averments can not be regarded as such sufficient evidence of a relator's right to an office as will warrant the issuing of a writ of *mandamus* at his instance.

Not only is the certificate silent as to the material fact that the judges cast up the number of votes set forth in the district certificates, but it also omits the formal declaration as to who was elected. Perhaps this latter omission, if the certificate were in all other respects regular, would not be a serious difficulty; but coupled with the failure to certify that the judges had done the chief thing which the law requires shall be done by them to show who was in fact elected, it becomes of greater consequence. The relator's right to the writ of *mandamus* depends upon this defective certificate which fails to show that the aggregate vote with which he is credited was ascertained in the mode,

and the only mode prescribed by the statute, and which also fails to "determine, declare and return" him elected. In this state of the case his right to the commission is far from clear, and the duty of the Governor to issue it is by no means an unequivocal one. This would, of itself, be sufficient to justify a refusal of the writ.

But, beyond this, we have said that a writ of *mandamus* will not be issued when there is an adequate remedy at law. The Code, *Art.* 33, *sec.* 94, provides a full and complete remedy at law for the appellee against Penn. Bragunier instituted proceedings against Penn in the Circuit Court for Charles county, under the section of the Code just alluded to. That case is now pending on appeal in this Court. In those proceedings the question as to who was in fact elected County Commissioner of Charles county could have been, if it was not, fully considered and decided, notwithstanding Penn held and still holds a commission for the office, and Bragunier holds none. The remedy thus given is not only full, but it is peculiarly appropriate; and if this be so, that fact precludes any redress by *mandamus.* It is, however, insisted the remedy thus provided is not adequate, because what is sought in the pending case is, not possession of the office, but merely possession of the muniment of title to it. But the relator has no right to the muniment of title if he has no right to the office itself. Now, if the writ of *mandamus* were granted and the commission were issued as prayed, the commission could only serve one of two purposes, viz., either, to enable Bragunier to qualify under it, and to assume the duties of the office, or, to supply *prima facie* evidence of his right to possess the office. If issued, it could not result in revoking Penn's commission. He is not a party to this proceeding, and cannot, therefore, be affected by it in any way. The Governor has no power to revoke a commission issued by him, except, perhaps, where he is authorized to remove the officer holding it. *Ewing vs. Thompson,* 43 *Pa. St.,* 372.

A commission issued to Bragunier would consequently not displace Penn, nor disqualify him from acting as County Commissioner. Penn is now in office under his commission. The law allows but three County Commissioners for Charles county. If a commission be now issued to Bragunier he obviously could not lawfully qualify under it, or enter upon the duties of the office, because if he did do so, there would be *four*, instead of but *three*, County Commissioners actually in office. If not authorized to qualify under it, still it is insisted Bragunier is entitled to a commission as *prima facie* evidence of his title to the office, and because his possession of the commission would shift the burden of proof in a contest between him and Penn upon Penn. But, if it be conceded that such would be the effect of his commission, a like effect must be given to the one held by Penn. Both commissions would then be *prima facie* evidence that the holder of each was entitled to an office which but one of them could lawfully fill—and that one, the one who was duly elected thereto—and consequently, one commission would neutralize the other as evidence, and there could, of necessity, be no shifting of the burden of proof at all. Hence, the commission, if issued to Bragunier, would be utterly useless to him for either of the purposes suggested. The writ of *mandamus* will never be issued to compel the doing of a nugatory or useless act.

We have said that Penn's claim to the office of County Commissioner is not before us. The action of the Executive in issuing a commission to him is likewise not before us, further than it is incidentally involved in the opinion we have expressed upon the irregularity and insufficiency of the returns made by the judges of election to the Governor. But the fact is disclosed by the record that a commission was actually issued to Penn; and the further fact is also apparent, that he qualified thereunder and entered upon the discharge of the duties of County Commissioner. These facts, whilst not influencing the decision of this case, when

taken in connection with the defects in the returns made by the judges of election, emphasize the conclusion that the appropriate remedy for the relator to pursue is the one provided by *sec. 94, Art. 33, of the Code.*

For the reasons we have given, we are of opinion that the order appealed from must be reversed, and the petition for a *mandamus* must be dismissed.

> *Order reversed, and petition dismissed,*
> *with costs in both Courts.*

(Decided 5th April, 1894.)

ROBINSON, C. J., dissented.