# ALICE V. BOVEY ET AL. *v.* EXECUTIVE DIRECTOR, HEALTH CLAIMS ARBITRATION OFFICE

[No. 121, September Term, 1981.]

*Decided February 22, 1982.*

The cause was argued before SMITH, ELDRIDGE, COLE, DAVIDSON and RODOWSKY, JJ., and J. DUDLEY DIGGES, Associate Judge of the Court of Appeals (retired), specially assigned.

*Barry J. Nace,* with whom were *Paulson & Nace* on the brief, for appellants.

*Maureen O'Ferrall Gardner, Assistant Attorney General,* with whom was *Stephen H. Sachs, Attorney General,* on the brief, for appellee.

SMITH, J., delivered the opinion of the Court.

Appellants, Alice V. Bovey et al., sought the writ of mandamus in the Circuit Court for Montgomery County to compel the Director of the Health Claims Arbitration Office to inquire of each potential member of an arbitration panel as to whether "the potential health care panelist is a stockholder in and/or insured by the same insurance carrier as the health care provider against whom a claim has been filed and against whom the panelists must sit in judgment." Although the; argued to us also that "updated biographical sketches of potential panelists" should be provided, this does not appear to have been sought in the petition for the writ of mandamus. However, our reasoning on the first issue would also cover the biographical sketches.

The trial judge sustained a demurrer without leave to amend. Sensing an issue of potential public importance relative to the operation of Maryland's Health Care Malpractice Claims Act, we issued the writ of certiorari ex mero motu prior to consideration of the appeal by the Court of Special Appeals. We conclude, however, that mandamus may not be used to compel performance of the acts here sought to be required.

The appellants are claimants in twelve separate cases filed in the Health Claims Arbitration Office. That office is created by Maryland Code (1974, 1980 Repl. Vol.) § 3-2A-03, Courts and Judicial Proceedings Article. The Health Care Malpractice Claims Act, embodied in §§ 3-2A-01 to -09 of that article, was enacted in 1976 as part of Maryland's answer to what was deemed to be the malpractice insurance crisis. By the terms of the Act, all claims in which damages of more than $5,000 are sought against a health care provider for medical injury allegedly suffered by a person must proceed under it before a suit may be brought in any court. Claims are filed with the Director of the Health Claims

Arbitration Office and are then referred to a panel of three arbitrators for nonbinding arbitration. Under § 3-2A-03 (c) arbitrators fall into three categories: attorneys, health care providers, and members of the general public who are neither attorneys, health care providers, or agents or employees of an insurance company or society. A panel must consist of one member from each category.

This controversy surrounds the Director's duties under § 3-2A-04 (b). That provision requires that within twenty days after the filing of a response to a claim, the Director is to "deliver to each party the names of five persons chosen at random from each of the categorical lists prepared by him pursuant to § 3-2A-03 (c), together with a brief biographical statement as to each of the 15 persons." He is required "[b]efore delivering the list ... [to] inquire of the persons selected and assure himself that they do not have a personal or economic relationship with any of the parties that can form the basis of any partiality on their part."

The data sheet which the Director requests health care providers to complete asks, among other things, the person's educational background; his field of practice; his hospital affiliation following training; any teaching appointments; whether he has ever been an arbitrator; whether he has ever been sued or had a claim brought against him for medical malpractice; whether he has ever testified as a medical witness in a judicial or administrative proceeding; whether he has ever been the subject of professional discipline; whether he has ever studied law; and whether he feels "confident that [he] could impartially hear and decide a health care malpractice claim solely on the basis of law and the evidence presented."

In connection with his motion for summary judgment, the Director set forth the questions that he asks each health care provider in advance of their being named to a list for submission as arbitrators. He first reads the names of the parties. Then inquiry is made as to whether a prospective panelist knows any of these people; how well they are known; whether they are an acquaintance, an associate, an

employee, an employer, or a neighbor; whether the person is seen socially; whether the relationship is a long-standing one; whether the prospective panelist has any economic dealings or connection with this person; whether he has referred patients to the health care provider or providers named on the claim; whether he is in any way affiliated with the hospital named on the claim; whether he has ever been used by any of the attorneys named on the claim as an expert witness; and whether any of the attorneys named on the claim have represented him.

Appellants contend that the questions do not go far enough. They argue "that 90% of the physicians in the State of Maryland are insured by [Medical Mutual Liability Insurance Company of Maryland]" and that "the chances are better than 9 out of 10 that a health care provider who is a potential panelist in a malpractice arbitration proceeding is insured by the same company as the health care provider charged with negligence and that the profit or loss of his carrier, and the surcharge upon him, is directly related to the award of the panel . . . ." From this they posit that since a panelist may not "have a personal or economic relationship with any of the parties that can form the basis of any partiality on [his] part," that such a person so insured has an economic relationship with one of the parties and thus is disqualified. Accordingly, they seek to compel the Director, as we have previously stated, to inquire as to "whether or not the potential health care panelist is a stockholder in and/or insured by the same insurance carrier as the health care provider against whom a claim has been filed and against whom the panelists must sit in judgment." Even if the English language could be so tortured that we would be obliged to conclude that an "economic relationship with a party" appearing before the panel exists between a panelist and that party when the same company insures both a panelist and the health care provider against whom a claim is brought (a fact not necessarily known to the panelist), the appellants' contention simply fails to be one concerning which mandamus is a proper remedy.

The law relative to mandamus was well summarized by

Judge Alvey for the Court almost a century ago in *George's Crk. C. & I. Co. v. Co. Com.*, 59 Md. 255 (1883):

> "*Mandamus* is a most valuable and essential remedy in the administration of justice, but it can only be resorted to to supply the want of some more appropriate ordinary remedy. Its office, as generally used, is to compel corporations, inferior tribunals, or public officers to perform their functions, or some particular duty imposed upon them, which, in its nature, is imperative, and to the performance of which the party applying for the writ has a clear legal right. The process is extraordinary, and if the right be doubtful, or the duty discretionary, or of a nature to require the exercise of judgment, or if there be any ordinary adequate legal remedy to which the party applying could have recourse, this writ will not be granted. The application for the writ being made to the sound judicial discretion of the court, all the circumstances of the case must be considered in determining whether the writ should be allowed or not; and it will not be allowed unless the court is satisfied that it is necessary to secure the ends of justice, or to subserve some just or useful purpose. 2 Dill. Mun. Corp. sec. 827; *State v. Graves,* 19 Md. 351, 374 [(1863)]; *Booze v. Humbird,* 27 Md. 1, 4 [(1867)]." *Id.* at 259.

Judge McSherry put it a bit more succinctly when he said for the Court in *Brown v. Bragunier,* 79 Md. 234, 29 A. 7 (1894):

> "The remedy by *mandamus* is not one which is accorded *ex debito justitiae.* The writ is a prerogative one; and unless the right which the relator seeks to enforce is clear and unequivocal, and the correlative duty which the respondent refuses to perform is purely ministerial, and there be no other adequate remedy at law, it will not be granted. *Weber v. Zimmerman,* 23 Md. 45 [(1865)]; *Hardcastle v. R. R. Co.,* 32 Md. 32 [(1870)]; *Legg v.*

*Annapolis,* 42 Md. 203 [(1875)]; *Marbury v. Madison,* 1 Cranch, 137." 79 Md. at 235-36.

Virtually the same views have been expressed more recently. See, *e.g., Md. Act. for Foster Child. v. State,* 279 Md. 133, 138-39, 367 A.2d 491 (1977); *Hillyard v. Chevy Chase Vill.,* 215 Md. 243, 246, 137 A.2d 555 (1958); and *Pressman v. Elgin,* 187 Md. 446, 451, 50 A.2d 560 (1947).

Our cases illustrate the situations in which mandamus does and does not lie. See, *e.g.,* the discussion in 2 J. Poe, *Pleading & Practice* § 710 (5th ed. H. Tiffany 1925). Two old cases involving the Comptroller aptly demonstrate the point. In *Thomas v. Owens,* 4 Md. 189 (1853), mandamus was held to lie to compel the State Treasurer to pay the salary of the Comptroller, although the writ was not issued under the peculiar facts of that case. That case was relied upon by certain of the parties in *Green v. Purnell,* 12 Md. 329 (1858), where an individual sought to require the Comptroller to issue a warrant for payment of rent. The Court said, "[*Thomas*] is a very different case from this. There the petition asked for a *mandamus* requiring the Treasurer of the State to pay the Comptroller, upon his warrant, the amount of his salary, which is regulated by the Constitution, and, of course, duly appropriated by law." *Id.* at 334. It held, however, "[H]er application does not require of the Comptroller a merely ministerial act, but under the circumstances, the question whether he should grant her a warrant for her alleged claim of $100, necessarily involves the exercise of judgment. And believing this to be the case, we must affirm the order of the Circuit Judge." *Id.* at 338.

We pointed out in *A. H. Smith Sand & Gravel v. Dep't,* 270 Md. 652, 661, 313 A.2d 820 (1974), citing *Stark v. Board of Registration,* 179 Md. 276, 284-85, 19 A.2d 716 (1941), that the writ may be issued to compel a hearing or to come to a decision. Other examples of where mandamus will lie include *Hammond v. Love,* 187 Md. 138, 143-44, 149, 49 A.2d 75 (1946) (The Board of Election Supervisors for Baltimore County counted ballots which did not bear endorsement of the name or initials of any of the judges of election as

required by law. Mandamus issued to compel deletion of these ballots from the returns although the action was not fraudulent or otherwise arbitrary.); *Heaps v. Cobb,* 185 Md. 372, 379-80, 385-86, 45 A.2d 73 (1945) (Undisputed essential facts combined to support pension claim by member's widow as prescribed by ordinance so as to place upon Trustees of Employees' Retirement System the mandatory duty to approve the claim.); and *Sudler v. Lankford,* 82 Md. 142, 145, 147-48, 33 A. 455 (1895) (Two Democrats on the Board of Election Supervisors for Somerset County refused to approve ballot clerks in each of the election districts, which names had been submitted by the Republican member. Then, as required by statute, he submitted the names of three persons for Republican ballot clerk in each district from whom, according to the statute, the Democrats were to select one. They chose other individuals. Chief Judge Robinson said for the Court, "The duty thus imposed upon the supervisors is a mere ministerial duty, and one, the performance of which may be enforced by *mandamus.*").

Instances in which mandamus does not lie are further illustrated by *Brack v. Wells,* 184 Md. 86, 90, 40 A.2d 319 (1944). (Whether State's Attorney instituted a particular prosecution was within his discretion, which if not grossly abused or contrary to his express duty would not be grounds for issuance of mandamus. The Court said, "When an act rests by statute in the discretion of a person or depends upon personal judgment, the writ of mandamus will not lie." (Citing cases.)); and *Devin v. Belt,* 70 Md. 352, 354-55, 17 A. 375 (1889) (Granting or refusing of application for liquor license based upon whether applicant was recommended by "five respectable freeholders . . . as a fit person to traffic in the article" involved exercise of sound judgment and discretion for which mandamus would not lie.).

In *Graham v. Gaither,* 140 Md. 330, 117 A. 858 (1922), mandamus was sought to compel the Police Commissioner of Baltimore City to enforce the laws so that baseball would not be played at Oriole Park on a Sunday. In affirming the denial of the writ, Chief Judge Boyd said for the Court:

"But it would seem to be clear that when, as in this case, the whole ground for the claim of right to have a mandamus issue is that the Police Commissioner not only did not adopt the method the plaintiffs insist upon, which they say is the best method, but did adopt another method which, although authorized by law, has thus far proven ineffective, although not because the Commissioner did not do all he could to make his method effective, but because another department of the law did not do its part, the plaintiffs' case is not made out. It may be that a firm and decided stand taken by the Commissioner might be productive of more good results than what has been done — that is to say — if he positively and emphatically notified the people who had charge of Sunday baseball that the games of which he has notice must not be played, as there is a law prohibiting them, and if they then persisted in doing so, he took active steps to prevent them, not by arresting them for what they had already done, but by preventing them from having the games, even if it did take two hundred policemen to do so, and there was danger of mob violence, as the answer says.

\* \* \*

". . . [W]hen an officer of the law has discretion vested in him as to certain acts and the method of performing them, the court will not generally, by mandamus, require him to perform them in any particular way, if it is satisfied that he acted honestly and within what the law left to his discretion, or that when the respondent has denied the material allegations of the petition, and it is left uncertain as to what method was best to be pursued, mandamus will not lie." 140 Md. at 347-49.

See also *Foote v. Harrington,* 129 Md. 123, 126-27, 98 A. 289, *appeal dismissed,* 246 U.S. 657 (1916).

In *Attorney General v. Johnson,* 282 Md. 274, 385 A.2d 57, *appeal dismissed,* 439 U.S. 805 (1978), we upheld the validity of the Act. There we rejected a contention that claimants were denied due process by the statute's failure to provide an opportunity to conduct a voir dire examination of prospective members of the arbitration panel so as to assure their freedom from bias and partiality. Judge Digges said for the Court:

> "The Act requires the director of the Health Claims Arbitration Office, who is responsible for preparation of a list of qualified persons willing to serve as arbitrators, § 3-2A03 (c), to assure himself that persons on the randomly chosen list delivered to the parties have no personal or economic relationship with either party, § 3-2A04 (b); it allows a party to object, and states reasons for doing so, to the inclusion of any arbitrator, and if the director finds there is a reasonable basis for the objection it requires him to replace the name of that arbitrator with another, § 3-2A04 (c); it allows a party to strike, without reason, two of the five potential arbitrators in each category (physicians, attorneys, and general public), § 3-2A04 (c); *see* § 3-2A04 (b); it requires the director to include a biographical statement for each of the potential arbitrators on the list delivered to the parties, § 3-2A04 (b); and finally, it permits the award to be vacated by the trial judge on the ground, among others, of 'evident partiality by an arbitrator,' in which event the case is tried as if there had been no award. § 3-2A06 (c); *see* Md. Code (1974), § 3-224 (b) (2) of the Courts Article. In addition, as we have already pointed out, a party is at liberty to reject the arbitration award for any reason and have the claim tried by a jury. We perceive no denial of due process. *See State ex rel. Strykowski v. Wilkie,* 81 Wis. 2d 491, 261 N.W.2d 434, 446 (1978)." 282 Md. at 296-97.

As *Johnson* makes clear, a party is afforded the right to attempt to nullify the arbitration award in subsequent judicial proceedings on the basis of an arbitrator's partiality or bias. *See* § 3-2A-06. Moreover, the right to a subsequent trial by jury is preserved. Accordingly, other avenues of potential relief exist for appellants if the Director errs in their cases.

The statute says that the Director shall inquire of the persons selected and assure himself that they do not have a personal or economic relationship with any of the parties that can form the basis of any partiality on their part. It does not say precisely how he should conduct this inquiry. Thus, the Director is to bring his sound judgment and discretion to bear in this process. Mandamus simply does not lie to compel him to follow any stated procedure.

> *Judgment affirmed; appellants to*
> *pay the costs.*