## ALBERT SUDLER AND SOUTHEY F. MILES *vs.* BENJAMIN F. LANKFORD.

*Election Law—Appointment of Ballot Clerks—Rights of Minority Supervisor of Election—Mandamus—Proof of Allegations Therein.*

Under the Acts of 1890, ch. 538, sec. 152, and 1891, ch. 701, where two Democratic and one Republican Supervisors of Elections were appointed for a certain county, if all the supervisors do not agree as to the appointment of a Republican ballot clerk, then the Republican Supervisor has the right to submit the names of three eligible Republicans for appointment as ballot clerk, and the Democratic Supervisors are bound to select one of the three names.

The performance of this duty is ministerial and may be enforced by *mandamus*.

A petition for a *mandamus* should state all the necessary facts, and therefore in this case a petition by the minority supervisor should state that the names of the persons submitted by him for appointment as ballot clerk were the names of persons *eligible* under the statute.

If the defendant in an application for a *mandamus* fails to answer the petition, the Court hears the case *ex parte, i. e.* the petitioner is allowed to offer such proof as may be necessary to satisfy the Court of the truth of his allegations, and the writ cannot be ordered until the Court is so satisfied both as to the law and the facts. If a demurrer is filed to the petition, the Court has no right to order the writ without proof of some kind.

Appeal from the Circuit Court for Somerset County. The petition of the appellee, Lankford, stated that he was duly appointed Supervisor of Election for said county to represent the Republican party, and that the defendants (appellants) were Supervisors of Election to represent the Democratic party; that it was the duty of the said supervisors to appoint three judges, two election clerks and two ballot clerks for each election district in said county, to act as such at the election to be held on November 5, 1895; that the petitioner submitted for selection the names of three persons for Re-

publican ballot clerks in each election district, but the defend-
ants refused to select one of the three persons so named but
selected other persons.   The petition also set forth certain
objections to the persons appointed ballot clerks by the ma-
jority of the board.   The defendants answered this petition
by alleging that the same was not sufficient in law.   The
Court below (HOLLAND and LLOYD, JJ.), "Ordered, that
the demurrer in this case be overruled and a peremptory
*mandamus* issue as prayed, as to the three Democratic ballot
clerks in Brinkley's, Fairmont and Lawson's Election Dis-
tricts in Somerset County, Maryland, and as to all the Re-
publican ballot clerks in Somerset County, Maryland, that
their appointments may be made in the method required by
law, and the petitioner is hereby adjudged his costs of suit
to be taxed by the Clerk of this Court."

The cause was argued before ROBINSON, C. J., BRYAN,
McSHERRY, BRISCOE, ROBERTS and BOYD, JJ.

*Joshua W. Miles* (with whom was *Harry L. D. Stanford*
on the brief), for the appellants.

The *mandamus* prayed for in this case should not issue
because: 1. The petition fails to present such a case as
admits of remedy by *mandamus*.   2. The petitioner, as one
of a body composed of three members, cannot by *mandamus*
compel other members of same body to discharge alleged
duties prescribed for action by the entire board.   3. The
petition nowhere states that a demand was made by the
appellee upon the appellants to do the acts sought to be
enforced, and nowhere states that the appellants refused so
to do.   4. The petition nowhere states that any of the per-
sons, whose names it alleges were submitted by the appellee,
are persons having the requisite qualifications for such
appointment.   5. Although said petition alleges that each
of the three certain ballot clerks appointed as the represen-
tation of the Democratic party is a brother of some candi-
date on the Democratic ticket, the said petition nowhere

states that there was a failure to agree to the appointment of any of such ballot clerks, and nowhere states that the said appellee demanded of the appellants that they submit a list of three eligibles in place of anyone of said appointees. 6. The Court below erred in its construction of the provisions of section 152, chapter 538, Acts of 1890.

*Edgar H. Gans* (with whom were *Thos. S. Hodson* and *Clarence P. Lankford* on the brief), for the appellee.

The manifest object of the law was to give the minority supervisors a real voice in the selection of clerks of election and ballot clerks. By the city law, this real representation of the minority supervisor extends to the appointment of registers and judges of election, as well as to election clerks and ballot clerks.

This real representation is brought about as follows : (*a.*) *By an Agreement.*—Each supervisor has a vote. If they all vote for the same man the board agrees upon the appointment. If one supervisor votes for some one else, then the board does not *agree* upon the appointment, a majority of the board may *agree*, but such an agreement is not the *agreement of the board.* Agreement means a concurrence of minds. If the members of the board agree, then the minority supervisor has been recognized, for without his concurrence the appointment could not be made in this way. (*b.*) *Rule of Appointment.*—If they do not agree, about a Democratic appointee, then the Democratic supervisors, if the majority of the board is Democratic, submit the names of three eligible persons to the Republican supervisor, and this *Republican supervisor selects* the *Democratic appointee* from these three names. If they do not agree about a Republican appointee, then the Republican supervisor submits three names to the Democratic supervisors, and *these Democratic supervisors* select the *Republican appointee* from these three names. This is manifestly the construction from the very terms of the law. By this means the Republican supervisor can check the appointment of a specially objectionable Democratic, and the

Democratic supervisors likewise may check the appointment of a specially objectionable Republican. The appointment of a Republican by a Republican is substantially secured, for the appointment must be made from a list of three submitted by the Republican supervisor. So, also, is the appointment of a Democrat by Democrats secured. The other construction simply ignores the whole of this machinery for the purpose of securing the appointment of both Democrats and Republicans by Democrats.

ROBINSON, C. J., delivered the opinion of the Court.

The Board of Supervisors of Election for Somerset County is composed of two Democrats and one Republican. The Republican supervisor presented the name of a Republican for ballot clerk in each of the election districts of said county, all of whom were rejected by the two Democratic supervisors. The Republican supervisor then submitted the names of three persons for Republican ballot clerk in each district, from whom the Democratic supervisors should select one from each district. The Democratic supervisors refused to select from these names, but appointed a Republican ballot clerk in each election district of their own selection, and who was not one of the three names submitted to them by the Republican supervisor. This is an application for a *mandamus* to compel the two Democratic supervisors to select one of the three persons submitted by the Republican supervisor as ballot clerks for each election district of the county.

It is contended on behalf of the Democratic supervisors, that inasmuch as they constitute a majority of the board, they have the right by reason of that majority to appoint any person as Republican ballot clerk whom they may see proper to appoint, provided the person so appointed is a Republican and a resident of the election district.

The appellee claims that in the event of all the supervisors not being able to agree as to the appointment of a Republican ballot clerk, he, as Republican supervisor, has

the right to submit the names of three eligible Republicans for ballot clerk, and that the Democratic supervisors are obliged by the terms of the statute to select one of the three names thus submitted.

The question turns entirely upon the construction of the Act of 1890, chapter 538, section 152, and the Act of 1892, chapter 701. This latter Act provides that the Governor shall biennially appoint, with the consent of the Senate, in each county, three supervisors of election, two of whom shall always be selected from the two leading political parties of the State, one from each of said parties. Under this Act the practice has been to appoint *two Democrats* and *one Republican supervisor*.

The Act then provides, that it shall be the duty of these supervisors to appoint three persons for each election district of the county, who are residents and voters of such election districts, as judges of election, and in making these appointments they are to select at least one of said judges for each district from among those of the leading political parties different from themselves or a majority of themslves. In other words, if the majority of the Board of Supervisors are Democrats, they must appoint one judge who is a Republican. And this is all the law requires as to the appointment of judges of election. Now, it is well settled that where appointments are to be made by any public board, and no method is specifically pointed out for the exercise of the power the majority rule governs. And therefore judges of election for the counties may be under the statute appointed by a majority vote.

When, however, the law comes to provide for the appointment of ballot clerks and other officers of election, a different mode of appointment is prescribed. The Act does not say simply that they shall be appointed by the Board of Supervisors, as it did in the appointment of judges of election, but provides in express terms that the ballot clerks or other officials shall be appointed as provided by section 152, chapter 538, Act of 1890. Now this section

provides that the Board of Supervisors shall appoint two ballot clerks for each election district; each one of the supervisors shall have a vote upon the proposed selection or nomination of any election clerk, and if in any instance, in consequence of such vote, the board cannot agree upon such appointment, then the names of three persons who are eligible shall be submitted for selection for election clerks by the supervisor or supervisors belonging to the leading political party entitled to be represented by such election clerk, and out of each three names the other supervisor or supervisors representing the other leading party of the State shall select the name of such election clerk, who,. when so selected, shall be appointed election clerk if otherwise eligible, and shall serve, unless excused by said Board of Supervisors of Election, so that there shall be two ballot. clerks for each voting place.

The statute thus gives to each of the two different political parties which polled the largest number of votes at the last preceding election one of the two ballot clerks, and means and can only mean that the supervisor or supervisors belonging to each of said parties shall have a voice in the selection of said ballot clerks. And when it says, that if the board cannot agree upon such appointment, then the names of three persons who are eligible shall be submitted,. &c., the word "agree," as thus used, means a *concurrence or agreement of each supervisor* and does not mean that a mere majority shall have the power to appoint without regard to the minority supervisor. So in this case when the two Democratic supervisors refused to agree to the appointment of the ballot clerk selected by the Republican supervisor, then it became the duty of the Republican supervisor to submit to the two Democratic supervisors the names of three persons eligible as ballot clerks, one of whom they were bound to select as ballot clerk. And if the Republican supervisor refused to agree to the appointment of the person selected by the Democratic supervisors, then it was the duty of the latter to submit to the Republican super-

visor the names of three persons eligible as ballot clerks, one of whom was to be selected by the Republican supervisor.

The duty thus imposed upon the supervisors is a mere ministerial duty, and one, the performance of which may be enforced by *mandamus*. And for the wilful refusal to discharge such, the supervisor would be amenable to the punishment prescribed by section 164 of the Act.

In view of its importance, involving as it does the appointment of ballot clerks, officers necessary to the conduct of an election, we have deemed it proper to decide the question which this appeal was intended to raise, which was fully argued by counsel on both sides. The proceedings, however, under the petition for a *mandamus*, have not been conducted in the manner prescribed by the Code so as to present the question. The Code provides that on an application for a writ of *mandamus* the defendant shall file an answer to the petition, fully setting forth all the defences upon which he intends to rely. The answer thus filed stands in the place of the return of the alternative writ under the former practice. And then the Code further provides that if the defendant shall fail to file his answer within the time fixed by the Judge, being served with notice thereof, the Judge shall proceed to hear the petition *ex parte, &c.* The Judge has no right, as we said in *Legg's case*, 42 Md. 203, to act upon the allegations in the petition as if they had been confessed, or to assume that they were true because the appellants failed to make sufficient answer to them. So if the defendant fails to answer, the Judge hears the case *ex parte*, that is, he allows the petitioner to offer such proof as may be necessary to satisfy the Judge that the allegations set forth in the petition are true. The case must be heard and the Judge satisfied both as to the law and facts, before the writ can be ordered. *Legg's case, supra.*

Now, in this case, the petition was heard on a general demurrer filed by the defendants, and no proof was offered to sustain the averments in the petition, it being assumed

that no proof was necessary, provided the facts alleged were admitted by demurrer. This would be so in ordinary pleading, but in an application for a prerogative writ like *mandamus*, the Legislature has seen fit to say that the defendant must file an answer setting forth specifically all the defences on which he relies. And if he fails to do so proof must be offered to satisfy the Judge that the allegations in the petition are founded in truth. The Court below had no right therefore to order a writ of *mandamus* without answer or proof of some kind.

The petition is also defective inasmuch as it does not aver that the three names suggested by the Republican supervisor were eligible, that is, residents and voters of the respective election districts, these being the qualifications prescribed by the statute for ballot clerks. In an application for a *mandamus* all the facts necessary to the granting of the writ should be stated. For these reasons the order of the Court drecting the writ to issue must be reversed and the petition dismissed.

*Order reversed and petition dismissed.*

(Decided October 30th, 1895, *per curiam.* The foregoing opinion was filed afterwards on December 12th, 1895.)