AUDITOR GENERAL *v.* CRANE.

1. DRAINS—ESTABLISHMENT—IRREGULARITY—EFFECT.
   Where a landowner has had actual notice of the proceedings to restore a drain and has waived any objections to the drain crossing his land if the line of the old drain is followed, which is done, and the statutory notice of the letting of the contract, assessment district, etc., has been given, no constitutional right of his has been invaded, and he cannot successfully resist the sale of his land for nonpayment of the special assessment, though the drain commissioner did not properly record the proceedings.

2. SAME—DEFAULT OF DRAIN COMMISSIONER—EFFECT—REMEDY.
   The non-filing of the papers in a drain proceeding by the commissioner does not deprive a landowner of his remedy, since upon discovering that the commissioner has not complied with the statute he may obtain a review of the proceedings upon the common-law writ of certiorari.

3. SAME—REMEDY—MANDAMUS.
   Where a drain commissioner fails to file the papers in a drain proceeding he may be compelled to do so by mandamus in order to lay a foundation for the statutory writ of certiorari.

Appeal from Van Buren; Des Voignes, J. Submitted February 18, 1908. (Docket No. 18.) Decided March 31, 1908.

Petition by James B. Bradley, auditor general, against Edgar A. Crane for the sale of land delinquent for taxes. From a decree for petitioner, defendant appeals. Affirmed.

*Russell M. Chase,* for petitioner.

*A. Lynn Free,* for defendant.

BLAIR, J. Appellant, Edgar A. Crane, appeals from the decree of the circuit court for Van Buren county ordering sale, for delinquent taxes, of the north quarter of

the northeast quarter of section 22, town 3 south, of range 14 west, belonging to appellant, and overruling appellant's objections to said sale.

The drain proceedings were commenced August 1, 1901, by an application to John Hathaway, county drain commissioner, for cleaning out, deepening, widening, straightening, or extending a drain known and designated as "the Three Mile Lake and Jenning's Drain." The application sets forth that:

"Said drain needs cleaning out to a point where said drain intersects a natural watercourse across the south one-half of the northwest one-quarter of section 23, said township, thence following said natural watercourse far enough on the north one-half of southwest one-quarter of said section to furnish sufficient fall to carry off the water. That such cleaning out of said drain is a necessity by reason of the same having become filled up."

The first order of determination in the matter of the extension of Three Mile Lake and Jenning's Drain purports to have been made by John Hathaway, county drain commissioner, on September 4, 1903. This order recites an application bearing date September 4, 1903:

"For the location of a certain drain therein as follows, to wit: Said Three Mile Lake and Jenning's Drain needs cleaning out to a point where said drain intersects the natural watercourse across the south one-half of the northwest one-quarter of section 23, said township, thence following said natural watercourse far enough on the north one-half, southeast one-quarter, said section, to furnish sufficient waterfall to cary off the water," etc.

The order determined that "said proposed drain is necessary and conducive to the public health," etc.; that the application should be granted and the drain located in accordance with the survey, etc.; "And I do further order and determine that the name of said drain shall be the 'Three Mile Lake Extension Drain,' by which name it shall hereafter be known and recorded."

On the 4th day of August, 1904, copies of notice of letting the drain contract were posted in "five public places

in said township to be traversed by said drain mentioned in said notice." The notice specified that the drain commissioner would receive bids on the 15th day of August, 1904, at the outlet of the drain, at ten o'clock a. m., and contained the statutory requirements as to announcement of assessments of benefits, review, etc.

The drain commissioner testified:

" I remember that I did not get all of the releases. I started condemnation proceedings in the probate court. The judge told me he could not appoint commissioners because in the cleaning out it was not necessary. * * * I caused notice of letting the contract to be published. The paper shown me, exhibit C, is one of the notices. * * * The notice to let I helped serve. Exhibit C is one of those notices. * * * One of those notices was served on the parties interested who has land the ditch went across, if they were in the township. I did not serve one on Mr. Crane and did not cause one to be served on him. On the 15th of August I met at the outlet of that drain. It is on Wess Young's land. Where the outlet was would depend upon where the surveyor originally stopped. I could not tell you exactly where that was. I do not know where that was. I did not know where that was at the time I posted these notices, nor where the original survey was; nor I do not think anybody else does. * * *

"Q. Did Mr. Ridgley dig the ditch according to that contract?

"A. No, sir.

"Q. How was it dug?

"A. Well, I relet it. I re-advertised by posting notices but not in paper. I posted notices that I would relet the contract, but did not serve a copy of any notice on those parties interested. The contractor dug some and then he gave up the contract. When I relet the contract to somebody else I have forgotten as to whether I relet it at the same price that I let it to Mr. Ridgley. The papers should tell all in regard to that. I took a written contract from the man that I let it to the second time. It should be here. I cannot tell whether I relet it for more or less. * * *

"Q. Do you know where the files of what you call the Three Mile Lake and Jenning's Drain are?

"*A.* I wish I did. There is no record of them whatever that I could find in any of the record books. I do not know that there ever was a legal drain laid out by that name, only from what I have heard. I could not find any record of one. * * * Well, now you will understand or you know that there was a misunderstanding here and we went ahead and cleaned this drain out. I went to see you (defendant Crane) to get a release of the right of way, and you said you would have no objection if it would go into the old drain, and when I went to the probate court to get this application for special commissioners I found that it only called for a clean-out and an extension of the lower end. That is what we went by.

"*Q.* Then you did not go by your survey stakes at all?

"*A.* Well, in a way, yes, but across your particular parcel of land I saw that we followed the old drain exactly. The survey stakes did not follow the old drain and in crossing your land we did not go where the survey stakes were. * * * When I relet the contract I did not follow the survey stakes. It was practically finished up to the Decatur road when I relet it. We followed the old drain on your land."

Defendant Crane, who is not a resident of Van Buren county, testified that the drain commissioner applied to him on May 16, 1904, for a release of the right of way of the drain:

"The present drain commissioner asked me if I would sign a release for the right of way for what he then said was the laying out of a drain across this land to be known as the Three Mile Lake and Jenning's Drain. At that time he had with him printed papers, which purported to be survey notes of the Three Mile Lake and Jenning's Drain and which I notice is a copy of one of the exhibits filed by him with the county clerk last Saturday and was identified as Exhibit —, as testified to by the county clerk. He presented me a paper which purported to be a release of the right of way for establishing the proposed drain. The paper marked Exhibit — in those deposited by him in January, 1907, and now here produced by the county clerk is that paper. I refused to sign the paper or to give any release of the right of way across the property for the purpose for which he asked for it, and I never have. The next that I knew about any drain on this land in question I

learned from some one that there had been a ditch dug across my land. I came to Paw Paw, went to the county clerk's office to see what authority any one had for digging such a ditch, and I could find no record of any. Several times since then I have examined and have had the county clerk examine the records and files where such papers, according to law, should be kept in his office and was unable to find any such papers or any record of any such drain, and the clerk was unable to find them and told me there never had been any such paper filed or deposited with him. I also examined in the said clerk's office and had him examine, three or four times at least within the last three or four years, for records or files pertaining to the drain which has been referred to here as the Three Mile Lake and Jenning's Drain. I was unable to find any record or proceeding, and the clerk was unable to find any pertaining to any drain known as the Three Mile Lake and Jenning's Drain.

"I can't tell when I first visited my premises after the digging of this ditch. When I did first visit them the ditch was completed. I went and saw the ditch where it came off my land, but did not go the whole length. So far as I know, it was completed then. I cannot tell how long after I had the talk with Mr. McElheny before I visited my premises, but it was not until after some one informed me there had been a ditch dug across my property. Mr. McElheny came to my office in regard to releasing the right of way. He presented me a paper purporting to be a release of the right of way. He told me he was going to dig a ditch if he could get the right of way; that is what he said. I think he said he had secured a number of rights of way. I did not state to him that if he was going to follow the line of the old ditch I did not know whether I would have any objection. The conversation with him was on the 16th day of May, 1904. That was before the ditch was dug."

The appellant filed 30 specific objections to the relief prayed for and, among others, the following:

" *Thirteenth.* He did not give notice of the description and the time and place of letting the contracts for building such drain, as required by law.

" *Fourteenth.* He did not, at the time and place noticed to review the premises, offer and hear proofs, reconsider

and review the premises affected by said drain, define and equalize the benefits, as required by law.

"*Fifteenth.* He did not, before receiving bids for letting said drain, or at any time, determine and announce the benefits, or per cent. of tax to be spread for constructing the drain, nor when it should be collected, as the law requires.   *   *   *

"*Eighteenth.* He did not apportion the per cent. of cost of construction of said drain to the township and to each parcel of land and announce the same at the time and place of letting the contract, as provided by law, and give notice of the apportionments as made by him."

The circuit judge overruled the objections and entered a decree as prayed for.

The defendant and appellant, having had actual notice of the proceedings, having waived any objections thereto, if the drain commissioner followed the old drain on his land, and the statutory notice of the letting of the contract, assessment district, etc., having been given, no constitutional right of his has been invaded, and the case is ruled by *Crandall* v. *McElheny*, 146 Mich. 191; *Auditor General* v. *Bolt*, 147 Mich. 283.

The non-filing of the papers by the drain commissioner did not deprive appellant of his remedy.   Upon discovering that the drain commissioner had not complied with the statute, he could have obtained a review of the proceedings upon the common-law writ of certiorari.   *Loree* v. *Smith*, 100 Mich. 252; *Moore* v. *McIntyre*, 110 Mich. 237; *Township of Blumfield* v. *Brown*, 130 Mich. 504.

The drain commissioner might also be compelled, by mandamus proceedings, to comply with the statute to lay a foundation for the statutory writ of certiorari.

The decree is affirmed.

GRANT, C. J., and MONTGOMERY, OSTRANDER, and MOORE, JJ., concurred.