# THE BOARD OF SUPERVISORS OF ELECTIONS OF BALTIMORE CITY

## *vs.*

## DANIEL J. LODEN, Chairman of the Democratic State Central Committee for Baltimore City, et al.

*Election cases: nomination of judges and clerks; effect of veto.*

Under the General Election Law, sec. 8 of Art. 33 of the Code of Public General Laws, if the name of a person proposed as a judge or clerk of election is vetoed by one of the supervisors of election, the same name or names can not be submitted by the supervisor or supervisors of the political party entitled to be represented by such judge or clerk to the other supervisor or supervisors for selection as judge or clerk.               p. 284

The statute gives each supervisor a veto and its language would be meaningless and without effect if when a supervisor exercises his right of veto, the other two could make the selection and appoint the person vetoed by him.               pp. 284-285

*Decided September 16th, 1916.*

Appeal from the Baltimore City Court.    (Stump, J.)

The facts are stated in the opinion of the Court.

The cause was argued before Boyd, C. J., Briscoe, Burke, Thomas, Pattison, Urner, Stockbridge and Constable, JJ.

*Wm. J. Ogden,* for the appellant.

*Isaac Lobe Straus,* for the appellee.

BRISCOE, J., delivered the opinion of the Court.

This is the defendant's appeal from an order of the Baltimore City Court dated the 30th day of August, 1916, in a mandamus proceeding.

The defendant below, and the appellant here, is the Board of Supervisors of Elections of Baltimore City, and this Board is composed of three members, to wit, Marion McKee and Robert H. Carr, Democrats, representing the Democratic Party, and Edmund J. Wachter, Republican, representing the Republican Party.

The plaintiff below and the appellee here is Daniel J. Loden, chairman of the Democratic State Central Committee for Baltimore City, and the petition is filed on his behalf both as chairman and in his individual capacity.

The proceedings were instituted for the purpose of testing and reviewing the legality of the selection and appointment of certain judges and clerks of election for the 10th and 19th Wards of the City of Baltimore, under sections 7 and 8 of Article 33, of the Code of Public General Laws.

By section 7 of this article, it is provided that in each year the Board of Supervisors of Elections in the City of Baltimore shall select before the first day of July four judges of election and before the fifteenth day of September two clerks for each election precinct in the City, taking two of such judges and one of such clerks from each of the two leading political parties of the State.

By section 8 of the same article it is also provided, that each supervisor shall have a veto upon the proposed selection or nomination of any judge or clerk, and if in any case, in consequence of such veto, the Board of Supervisors can not agree upon an appointment, then the supervisor or supervisors belonging to the political party entitled to be represented by the judge or clerk in question shall name three men who are eligible and from these the other supervisor or supervisors shall select such judge or clerk.

By the third paragraph of the petition it is averred, in substance, as a basis for the relief sought, that during the month of June, 1916, the names of divers persons were submitted and nominated to the defendant, for appointment as judges and clerks of election of Baltimore City to serve in all the several election precincts thereof at the coming congressional and presidential elections to be held in the City in the month of November, 1916, and also to serve as required by law in the conduct of the registration of the voters of the City in all the election precincts thereof in 1916 and prior to the election in November, in that year; that on the morning of the 30th of June, 1916, the defendant met at its board room in the City, for the purpose of acting upon, selecting and appointing the judges and clerks of election in and for all the election precincts; that among the names submitted and nominated to the defendant for appointment as judges and clerks of election for the 10th Ward and the 19th Ward, were certain persons, their names and residences being fully set forth and enumerated in the petition.

It further avers, that when the defendant entered upon the consideration of the selection of judges and clerks for the several precincts of the 10th and 19th Wards and more particularly upon the consideration of the names mentioned, proposed and nominated for selection and appointment thereto, Robert H. Carr, Esq., one of the Democratic and majority members of the Board of Supervisors, in the exercise of the power duly vested in him by law, vetoed the selection and appointment of the persons nominated and whose names are set forth and enumerated; that thereupon Mr. McKee, the other Democratic and majority member of the board, claiming that he could then lawfully name and submit to the other or minority supervisor, to wit, Mr. Wachter, for selection by him, the names of the persons proposed and nominated for judges and clerks and previously vetoed by Mr. Carr, proceeded so to do and submitted all of the names that had been vetoed; that Mr. Carr did not concur, but protested

against the naming and submission of the names, by McKee to Wachter of the names of the persons whom he had previously vetoed; that nevertheless McKee did name and submit to Wachter for selection as judges and clerks in the 10th and 19th Wards, the names which had been vetoed and objected to by Carr, and that Wachter proceeded to select as such judges and clerks, for the 10th and 19th Wards, in and for the precincts thereof all the names vetoed and objected to by Carr. which names had been submitted to him by McKee, despite the vetoes and objections by Carr.

The petition, then, avers, that these alleged and pretended selections of judges and clerks were in violation of the Laws of Maryland and are illegal and void.

The prayer of the petition is, that the Court may declare the selection of the persons named in the third paragraph of this petition as having been selected wrongfully and illegally, by the defendants for appointment as judges and clerks of election in the several precincts of the 10th and 19th Wards, to be illegal and void and may vacate and annul the same and may issue its writ of mandamus directed to the defendants, the Board of Supervisors of Elections of Baltimore City, and each of the members of said board, to prevent and restrain the defendants from proceeding to appoint, swear in, qualify or admit the persons so attempted to be selected and appointed by them and from directing or causing them, to perform or undertake to perform the functions or duties of Judges and Clerks of Election in the two wards, respectively, and further by the writ of mandamus to direct, order and require the Supervisors of Elections to proceed to select and appoint the Democratic Judges and Clerks of Elections in and for the several precincts, hereinabove mentioned, of said 10th and 19th Wards, respectively, in the manner and in all respects according to the provisions and requirements of the Election Law of Maryland and particularly to direct, order and require the defendants, the Supervisors of Elections of Baltimore City, and each of them, fully to do, perform, carry out in all respects and particulars all

the acts and things proper and necessary for them and each of them, to do under and in accordance with the Election Law of Maryland, lawfully and properly to appoint the Democratic Judges and Clerks of Election in and for the several precincts of said 10th and 19th Wards, respectively, and ordering such other and further relief as may be proper in the premises.

The defendant answered the petition, and in its answer sets out in reply, the contentions, relied upon, as a defense, to the petition, but it nowhere denies or controverts the material facts averred by the petition, but substantially admits them to be true.

By the third paragraph of the answer it is admitted, that what actually occurred at the meeting of the board, was that Mr. Carr, did veto the proposed selection of names set out in the third paragraph of the petition, that Mr. McKee also vetoed the names on the printed list offered by Mr. Carr.

While the answer denies the procedure of the board upon the veto, in certain respects, it practically and in substance admits that these vetoed names were subsequently selected and the persons appointed, as Judges and Clerks of Election, for the 10th and 19th Wards, of the City of Baltimore, notwithstanding the veto of Mr. Carr.

The case was heard upon bill, answer and proof, and the Court below, held, that "the appointment of the persons named in the third paragraph of the petition, as Judges and Clerks of Election, for the specified precincts of the 10th and 19th Wards, of Baltimore City, were invalid, because the manner thereof was not in compliance with the statute."

From an order of the Baltimore City Court, dated the 30th day of August, 1916, directing the defendant the Supervisors of Elections of Baltimore City to proceed forthwith to fill in said precincts of the 10th and 19th Wards, the positions of Judges and Clerks of Elections either by the appointment in conformity with the statute of those persons already invalidly named or of others in compliance with the statute, this appeal has been taken.

The single question presented by the record involves the construction of section 8, Article 33, of the Code of Public General Laws, and that is, whether the name of a person proposed for selection as a judge or clerk of election, which has been vetoed by one of the supervisors can be afterwards submitted by "the supervisor or supervisors of the political party entitled to be represented by the judge or clerk to the other supervisor or supervisors for selection as judge or clerk."

The question, we think, is free from difficulty, both upon authority and upon a plain construction of the statute itself.

In *Sudler* v. *Lankford,* 82 Md. 146, this Court had before it the construction of a similar statute, involving the appointment of ballot clerks and other officers of election. CHIEF JUDGE ROBINSON, in the opinion in that case, said: "Now this section provides that the Board of Supervisors shall appoint two ballot clerks for each election district; each one of the supervisors shall have a vote upon the proposed selection or nomination of any election clerk, and if in any instance, in consequence of such vote, the board can not agree upon such appointment, then the names of three persons who are eligible shall be submitted for selection for election clerks by the supervisor or supervisors belonging to the leading political party entitled to be represented by such election clerk, and out of each three names the other supervisor or supervisors representing the other leading party of the State shall select the name of such election clerk, who, when so selected, shall be appointed election clerk if otherwise eligible, and shall serve, unless excused by said Board of Supervisors of Election, so that there shall be two ballot clerks for each voting place.

"The statute thus gives to each of the two different political parties which polled the largest number of votes at the last preceding election one of the two ballot clerks, and means and can only mean that the supervisor or supervisors belonging to each of said parties shall have a voice in the selection of said ballot clerks. And when it says, that if the

board can not agree upon such appointment, then the names
of three persons who are eligible shall be submitted, etc.,
the word 'agree,' as thus used, means a concurrence or
agreement of each supervisor and does not mean that a mere
majority shall have the power to appoint without regard to
the minority supervisor.   So in this case when the two
Democratic supervisors refused to agree to the appointment
of the ballot clerk selected by the Republican supervisor,
then it became the duty of the Republican supervisor to sub-
mit to the two Democratic supervisors the names of three
persons eligible as ballot clerks, one of whom they were
bound to select as ballot clerk.   And if the Republican super-
visor refused to agree to the appointment of the person se-
lected by the Democratic supervisors, then it was the duty
of the latter to submit to the Republican supervisor the
names of three persons eligible as ballot clerks, one of whom
was to be selected by the Republican supervisor."

But apart from the decision just cited, it is manifest from
the language of the Act, itself, that it was the clear purpose
and intention of the Legislature, that if the board cannot
agree upon the selections of judges and clerks, the veto when
exercised as provided by the statute defeats and prevents the
selection of any judge or clerk proposed for selection.   The
words of the statute are, "each supervisor shall have a veto
upon the proposed selection or nomination of any judge or
clerk."   This language would be meaningless and without
effect if when a supervisor of election exercised his undoubted
right of veto, given by the statute, the other two supervisors
could make the selection and appoint the person vetoed by
him.

The statute further provides, "in consequence of such veto,
the Board of Supervisors cannot agree upon an appointment.
then the supervisor or supervisors belonging to the political
party entitled to be represented by the judge or clerk in ques-
tion shall name three men who are eligible, and from these
the other supervisor or supervisors shall select such judge or
clerk."

Now to hold under this latter section as contended by the appellant that a vetoed name can be presented as one of the three men, by the supervisor or supervisors of the political party entitled to be represented, would not only defeat the object and purpose of the Act, but would permit the selection of the vetoed name, notwithstanding the exercise of the veto and of its existence under the first part of the section.

The answer in this case admits and the proof shows, that Mr. Carr, one of the Supervisors of Election of Baltimore City, not only vetoed the names of the persons set out in the third paragraph of the petition, but that he did not agree to their subsequent submission by Mr. McKee, the other majority supervisor, to Mr. Wachter, the minority supervisor.

The statute clearly contemplates that when the Board of Supervisors cannot agree upon an appointment, and the two majority supervisors are to name three men to the minority supervisor from which he makes a selection, the naming or selection of these names must be by agreement, and be the joint act of the two majority supervisors. It must be the united and concurrent action of the two. They are required by the Act to agree upon three and it means that, both acting, shall name the three. In *Sudler* v. *Lankford, supra,* it is said: "And if the Republican supervisor refused to agree to the appointment of the person selected by the Democratic supervisors, then it was the duty of the latter to submit to the Republican supervisor the names of three persons eligible as ballot clerks, one of whom was to be selected by the Republican supervisor."

There were other questions discussed at the hearing, but we find it unnecessary to review them.

For the reasons stated, we affirmed the order of the Baltimort City Court by a *per curiam,* filed on the 8th of September, 1916.

*Order affirmed, with costs.*