WILLIAMS *v.* DOANE.

1. MANDAMUS—DRAINS—VALIDITY OF PROCEEDINGS—CONSTRUCTION OF STATUTE.

Where defendants, drain commissioners of three adjoining counties, failed to agree as to the necessity of a proposed drain traversing their counties, and one of them appealed to the State highway commissioner, under section 4933, 1 Comp. Laws 1915, who decided in favor of the necessity of the drain, mandamus will not issue at the instance of a landowner objecting to the validity of the proceedings to compel the commissioners to correct the record where it is conceded to be as plaintiff claims.

2. DRAINS—JOINT ACTION OF COMMISSIONERS—APPEAL TO HIGHWAY COMMISSIONER—CONSTRUCTION OF STATUTE.

The statutory rule of construction in section 64, 1 Comp. Laws 1915, providing that all words purporting to give a joint authority to three or more public officials or other persons shall be construed as giving such authority to a majority of them, does not apply to action of county drain commissioners of three counties upon an application, under section 4932, 1 Comp. Laws 1915, for the construction of a drain traversing their counties, since section

4933, 1 Comp. Laws 1915, provides that if they are unable to agree, they, or either of them, may appeal to the State highway commissioner, whose decision on the matter in dispute shall be final.

Certiorari to Livingston; Miner, J. Submitted April 5, 1918. (Calendar No. 28,275.) Decided June 3, 1918.

Mandamus by Lester Williams to compel E. J. Doane and others, drain commissioners of Ingham, Livingston, and Washtenaw counties, to dismiss proceedings for the establishment of a drain. From an order granting the writ, defendants bring certiorari. Reversed.

*Baldwin & Richards,* for appellants.

*Glenn S. Mack* and *Louis E. Howlett,* for appellee.

STEERE, J. By certiorari to mandamus defendants ask review and reversal of a peremptory order of the circuit court of Livingston county directing them in their official capacity to meet, take joint negative action upon the necessity for, and to dismiss pending proceedings looking to laying out a drain through the three counties they respectively represent.

The contemplated improvement, called the Lowe lake drain, as planned, has a length of between 11 and 12 miles, and in its course traverses the three counties mentioned. When proceedings were instituted for the improvement, in 1916, E. J. Doane was drain commissioner of Ingham county, Clayton E. Deake of Washtenaw county, and Arthur Grieve of Livingston county, the latter having since been succeeded by defendant Kenyon Wrigglesworth. Plaintiff Williams owns land in Livingston county through which the proposed drain would run, necessitating securing from him right of way for it. An application for this drain

was signed by the requisite number of freeholders liable to assessment for benefits received and filed with the commissioner of Ingham county in February, 1916, pursuant to which the three commissioners met and acting jointly called a public meeting for consideration of such application, to be held March 7, 1916, at the village of Stockbridge in Ingham county, public notice being given which stated that:

"All persons whose lands were to be taken for the said drain and all other persons interested therein were asked to appear at said time and place to be heard on said question in accordance with the statute."

At this meeting the three commissioners did not agree as to the necessity for the drain, the commissioner of Ingham county being in favor of it and the other two announcing themselves as adverse to it. Two days thereafter the commissioners met again and signed a statement entitled *"Disagreement of Commissioners as to Necessity of Proposed Drain,"* which with recital of details as to the application therefor, description of the same, etc., concluded as follows:

"And whereas, a hearing was duly had by us on the 9th day of March, A. D. 1916, in accordance with the statute, for the purpose of determining the necessity of said drain.

"And whereas, full opportunity was given to all persons appearing at said hearing to offer evidence for or against the proceedings.

"Now therefore in view of the premises aforesaid, we, the said drain commissioners of said counties of Ingham, Washtenaw and Livingston, are hereby unable to agree as to the necessity of said drain."

Not long thereafter, and during that spring, the commissioner of Ingham county appealed to the State highway commissioner to determine the necessity for the drain. After a hearing on such appeal the State highway commissioner determined said drain to be a public necessity, and made an order accordingly; fol-

lowing and pursuant to which the three county commissioners met and jointly made an order of determination in harmony with that of the State highway commissioner, and proceeded with the prescribed statutory steps for such improvement, which, amongst other things, required them to secure right of way for the drain.

Being unable to obtain voluntary release of right of way from certain parties in Livingston county through whose lands the drain would go, including plaintiff, the commissioners, in November, 1917, made application as provided by statute to the probate court of that county for appointment of disinterested persons as commissioners to determine the necessity of taking the desired lands, appraise damages, etc.

While these condemnation proceedings were pending, plaintiff Williams applied to the circuit court of Livingston county for a peremptory writ of mandamus to compel the three drain commissioners to meet, dismiss their application before the probate court for condemnation, and enter an order determining said drain not to be a necessary public improvement. The commissioners made answer, and after hearing thereon at which the material facts were apparently not in dispute, the court made an order that the three commissioners should—

"assemble themselves together on some date to be determined by them, and not more than 30 days from this date, and then and there enter an order determining the application for the Lowe lake drain, so-called, to be unnecessary and discontinue further proceedings toward the construction thereof and dismissing the application therefor, and that each of said persons file in their respective offices a copy of said order as of the date of March 8, 1916."

Defendants' counsel urge and argue in their brief as reasons why this order of the circuit court should be reversed the following propositions:

"*First.* Mr. Doane, or any one of the commissioners, had the right to appeal to the State highway commissioner, when they disagreed as to the necessity of the drain.

"*Second.* That the court had no power to order the statement of disagreement (Exhibit A) amended, or a discretionary order entered.

"*Third.* The meeting held by the commissioners was informal.

"*Fourth.* Because the statutory certiorari was the proper remedy to review any alleged illegal drain proceedings."

Plaintiff's counsel say that the meritorious legal issue involved is, whether upon the necessity for a proposed drain which traverses more than one county "a majority vote of the commissioners decides the question." And, as to the remedy resorted to in the circuit court, admit that certiorari is the "proper and exclusive remedy for all defects in records of the proceedings at this stage of the establishment of a drain"; but contend that rule is not applicable to the situation presented here because plaintiff is "not objecting to the record," and is only seeking to compel the commissioners to make a proper and truthful record of their action, which they neglected or failed to do, stating their position as follows:

"We are complaining because they failed to make a record. We simply are asking that these commissioners make the record that the statute required them to make. * * * If certiorari were brought, the return would show that these commissioners failed to agree, whereas, in fact, that is not true. In view of the conduct of the commissioners, we submit that mandamus was the only remedy open to Mr. Williams, whose lands were about to be taken by these commissioners for this alleged public purpose, whereas, in fact, these commissioners had determined legally that this alleged public improvement was unnecessary."

In *Auditor General* v. *Crane,* 152 Mich. 94, it was

held that where the drain commissioner failed to file certain papers essential to a true record of a drain proceeding, mandamus might be brought to compel him to comply with the statute in that particular, to lay a foundation for the statutory writ of certiorari; and mandamus was recognized in *Cilley* v. *Sullivan,* 187 Mich. 447, as proper to compel respondent to perform his official duties in joint action with the drain commissioner of an adjoining county where he had declined to co-operate in levying a special assessment for a drain, making the contention that the statute upon which the drain proceedings were based was claimed to be unconstitutional, and because of the probability of litigation following the heavy expenditures which proceeding with the drain would involve. On certiorari to refusal of the trial judge to grant mandamus the constitutionality of the law was passed upon by this court, it being held that the provision conferring authority upon the State highway commissioner to act as arbitrator in drain proceedings when properly appealed to was not unconstitutional as invading the right of local self-government, and mandamus should be issued by the trial court as prayed.

Conceding in the instant case that, if the record of the drain proceedings made by the commissioners is untrue in fact or incomplete, plaintiff is entitled to compel the commissioners by mandamus to correct and perfect them, the only material facts they would or could add to their record bearing upon the point at issue would be a statement of just how each commissioner stood and voted upon the necessity of the drain, which is admitted to have been as plaintiff claims, following which the truthfulness of their record that they were unable to agree is contingent upon whether defendants' construction of the statute or that contended for by plaintiff should prevail.

Plaintiff's contention is that the commissioners did,

202—Mich.—6.

in fact and law, agree that the drain was not a public necessity for the reason that, acting jointly upon the question, a majority so determined. In support of this claim counsel urge, as controlling, the rule of construction found in section 64, 1 Comp. Laws 1915, which provides, in part:

"In the construction of the statutes of this State the following rules shall be observed unless such construction would be inconsistent with the manifest intent of the legislature, that is to say:     *   *   *
"3. All words purporting to give a joint authority to three or more public officials or other persons shall be construed as giving such authority to a majority of such officers or other persons unless it shall be otherwise expressly declared in the law giving the authority." Citing Scott v. Young Men's Society, 1 Doug. 119; Serrell v. Patterson, 107 Mich. 234.

The drain laws of Michigan which have long been a fruitful subject of litigation and legislation are found, in the form in which they were in force at the time of the proceedings under inquiry, in chapter 93, 1 Comp. Laws 1915, beginning with consecutive section 4870. In section 4874 provision for joint action of county commissioners first appears as follows:

"In all cases where the entire drain shall be laid in one county, and the benefits to be derived therefrom and the assessments for its construction shall extend to lands situated in one or more adjoining counties, then all such drains shall be laid by the commissioners of such counties acting jointly, and all their proceedings shall be had under the provisions of this act regulating the construction of drains traversing more than one county."

In chapter 7 of the act, beginning with section 4932 of the compilation, the subject of joint action for construction of drains traversing more than one county is dealt with, it first being provided that:

"Whenever it may be desired to locate, establish,

widen, deepen, extend or clean out a drain traversing more than one county, or affecting lands lying in more than one county, an application therefor shall be made to the county drain commissioner of either county traversed by the proposed drain. Such application shall be subject to the same conditions and the applicants to the same obligations and liabilities as in other drains under this act."

The act further provides that the commissioner receiving the application shall, if he deems the drain necessary, notify the commissioners of other interested counties, furnish each with a copy of the application, and call a meeting. That portion of the law particularly in controversy here (section 4933) is as follows:

"Such county drain commissioner or commissioners shall, at the time and place fixed as above, meet with the county drain commissioner having the original application, and shall thereupon and thereafter jointly take all steps and perform all acts, and sign all papers as county drain commissioners are required to do singly in the case of other drains, including the application to the probate court: *Provided,* That should the said county drain commissioners be unable to agree as to the necessity, location or benefit of such drain, or any other matter relative thereto they, or either of them, may appeal to the State highway commissioner, who shall act in the premises as hereinafter provided. Such State highway commissioner shall be furnished with all the data relative to such drain, which may be in the possession of said county drain commissioner, or either of them, and said highway commissioner shall have the right to subpœna witnesses and take testimony, and his decision relative to such matters as may be in dispute shall be final."

The statutory rule of construction quoted is but declaratory of the general common law rule which prevails where unqualified joint authority is given to public officials in the conduct of public matters, and is well sustained by the numerous authorities plain-

tiff's counsel cite, but to apply it in the construction of a particular statutory provision it must be consistent with the manifest intent of the legislature and purpose of the enactment. The joint authority given to drain commissioners by this statute is qualified by the proviso that if they "are unable to agree  *  *  * they, or either of them, may appeal to the State highway commissioner," etc. An agreement of individuals or officers where each has a voice and vote naturally indicates a concurrence of minds—that they are of the same mind upon the question under consideration. Such is the construction put upon wording similar to this in *Sudler* v. *Lankford*, 82 Md. 142.

If the agreement of a mere majority was intended as final the proviso would seem superfluous. Construed with the manifest object in view and indicated legislative intent in dealing with this portion of the drain law, this language in the connection used fairly means that a concurrence or agreement of each commissioner is essential for a final settlement of the question to the exclusion of an appeal, which the act expressly authorizes any one of them to take in case the "commissioners be unable to agree." Broadly viewed, the fair intent and proper construction of the provision is that no one of the counties involved shall be finally bound, negatively or affirmatively, by those representing the others without the concurrence of its representative except by affirmance on appeal to the State highway commissioner, whose decision on the matter "in dispute shall be final." But even accepting the construction contended for by plaintiff as to the joint authority of the commissioners in the first instance, and conceding that a decision of a majority is controlling and final if not appealed from, the legislature has undoubted power to grant the right of appeal to any disagreeing commissioner, and we are satisfied the intent to confer such right is made

evident by the language of the provision in question.

The order of the circuit court directing the commissioners to reconvene and take further action as. therein directed is therefore reversed and set aside.

OSTRANDER, C. J., and BIRD, MOORE, BROOKE, FELLOWS, STONE, and KUHN, JJ., concurred.